## CITY OF NEW YORK *v.* SAPER, TRUSTEE IN BANKRUPTCY.

NO. 168.

Argued January 4, 1949.—Decided March 7, 1949.

*Seymour B. Quel* argued the cause for the City of New York, petitioner in No. 168. With him on the brief were *John P. McGrath* and *Isaac C. Donner.*

*Francis R. Curran,* Assistant Attorney General, argued the cause for the State of New York, petitioner in No. 200. With him on the brief were *Nathaniel L. Goldstein,* Attorney General, and *Wendell P. Brown,* Solicitor General.

*I. Henry Kutz* argued the cause for the United States, petitioner in No. 201. With him on the brief were *Solicitor General Perlman, Assistant Attorney General Caudle, Robert W. Ginnane, Ellis N. Slack* and *Lee A. Jackson.*

*David Haar* argued the cause and filed a brief for respondent in No. 168.

*Sydney W. Cable* argued the cause and filed a brief for respondent in Nos. 200 and 201.

MR. JUSTICE JACKSON delivered the opinion of the Court.

The ultimate issue in these three cases is whether tax claims against a bankrupt bear interest until the date of bankruptcy,[1] as held by the court below,[2] or until payment, as previously held by another Court of Appeals.[3] We granted certiorari[4] to resolve the conflict, the matter being of considerable practical importance[5] in the administration of the Bankruptcy Act.[6]

---

[1] The terms "date of bankruptcy" and "bankruptcy," with reference to time, mean the date when the petition was filed, 30 Stat. 544, as amended 52 Stat. 840–841, and are used accordingly in this opinion.

[2] In No. 168 the District Judge allowed New York City interest to the date of payment, 75 F. Supp. 458, and the Court of Appeals reversed, 168 F. 2d 268. In Nos. 200–201, the District Judge allowed the United States and the State of New York interest only to the date of bankruptcy, 73 F. Supp. 685, and the Court of Appeals affirmed, 168 F. 2d 272.

[3] *Davie* v. *Green,* 133 F. 2d 451.

[4] 335 U. S. 811, 812.

[5] Those most immediately concerned with administration of the Act have frequently expressed dissatisfaction over the inroads taxes and interest thereon make in the fund available for creditors. For discussions of that and similar practical problems see 14 J. N. A. Ref. Bankr. 3; 17 *id.* 129; 18 *id.* 17; 19 *id.* 31; 21 *id.* 106; 22 *id.* 41; 44 Com. L. J. 411; and 45 *id.* 370. See also Judge Bright's opinion below, 73 F. Supp. 685, and referees' comments in *Matter of Dorsey,* 46 Am. B. R. (N. S.) 146, and *Matter of D. O. Summers Co.,* 45 Am. B. R. (N. S.) 123. The whole subject of tax claims and interest

If the question were one of first impression to be decided in the light of the present statute alone, we should have no difficulty in affirming the court below. More than forty years ago Mr. Justice Holmes wrote for this Court that the rule stopping interest at bankruptcy had then been followed for more than a century and a half. He said the rule was not a matter of legislative command or statutory construction but, rather, a fundamental principle of the English bankruptcy [7] system which we copied. *Sexton* v. *Dreyfus*, 219 U. S. 339, 344. Our present statute contains no provision expressly repudiating that principle or allowing an exception in favor of tax claims. Every logical implication from relevant provisions is to

is discussed at length in 3 Collier on Bankruptcy (14th ed., 1941, and 1948 Cum. Supp.) ¶¶ 57.22, 57.30, 63.16, 63.26, 64.404, 64.407, 64.408. Comments appear in 61 Harv. L. Rev. 354; 21 Temp. L. Q. 428; 29 Va. L. Rev. 206; 34 *id.* 835; 23 N. Y. U. L. Q. Rev. 516.

[6] Bankruptcy Act of 1898, c. 541, 30 Stat. 544, as amended by the Chandler Act of June 22, 1938, c. 575, 52 Stat. 840, 11 U. S. C. § 1 *et seq.*

[7] In England the practice was well established, 2 Blackstone, Commentaries \*488; *Bromley* v. *Goodere*, 1 Atk. 75; *Ex parte Bennet*, 2 Atk. 527; and applied to mortgages as well as unsecured debts, *Ex parte Badger*, 4 Ves. Jr. 165; *Ex parte Ramsbottom*, 2 Mont. & Ayr. 79; *Ex parte Penfold*, 4 De G. & Sm. 282; *Ex parte Lubbock*, 9 Jur. (N. S.) 854; *In re Savin*, L. R. 7 Ch. 760, 764; *Ex parte Bath*, 22 Ch. Div. 450, 454; *Quartermaine's Case*, [1892] 1 Ch. 639; *In re Bonacino*, 1 Manson 59. Two exceptions were recognized: if the alleged "bankrupt" proved solvent, creditors received post-bankruptcy interest before any surplus reverted to the debtor, *Bromley* v. *Goodere*, 1 Atk. 75; *Ex parte Mills*, 2 Ves. Jr. 295; *Ex parte Clarke*, 4 Ves. Jr. 676; and if securities held by a creditor as collateral produced interest or dividends during bankruptcy such amounts were applied to post-bankruptcy interest, *Ex parte Ramsbottom*, 2 Mont. & Ayr. 79; *Ex parte Penfold*, 4 De G. & Sm. 282; *Quartermaine's Case*, [1892] 1 Ch. 639. These exceptions have been carried over into our system. See *American Iron Co.* v. *Seaboard Air Line*, 233 U. S. 261, 267; *Sexton* v. *Dreyfus*, 219 U. S. 339, 346.

the contrary. Section 63 (a) (1), 11 U. S. C. § 103 (a) (1) allows interest on judgments and written instruments[8] only to date of bankruptcy. Section 63 (a) (5), 11 U. S. C. § 103 (a) (5) allows interest only to that date on debts reduced to judgment[9] after bankruptcy.[10] No provision permits post-bankruptcy interest on other claims in general or tax claims in particular. Section 57 (j), 11 U. S. C. § 93 (j), forbidding allowance of governmental penalties or forfeitures, permits[11] allowance of losses sustained by the acts penalized, with actual costs and "such interest as may have accrued thereon according to law." However, on its face this appears to delimit even such allowable debts as of the date of bankruptcy and to allow no more interest than does § 63 with respect to the claims there specified. Moreover, there is no

---

[8] "Debts of the bankrupt may be proved and allowed against his estate which are founded upon (1) a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition by or against him, whether then payable or not, with any interest thereon which would have been recoverable at that date or with a rebate of interest upon such as were not then payable and did not bear interest . . . ."

[9] ". . . (5) provable debts reduced to judgments after the filing of the petition and before the consideration of the bankrupt's application for a discharge, less costs incurred and interest accrued after the filing of the petition and up to the time of the entry of such judgments . . . ."

[10] Although the provisions of § 63 (a) (1) requiring a rebate of unearned interest, and of § 63 (a) (5) eliminating certain post-bankruptcy interest, may in practice be operative but infrequently, they reflect a principle of long standing. See 2 Blackstone, Commentaries *488.

[11] "Debts owing to the United States or any State or subdivision thereof as a penalty or forfeiture shall not be allowed, except for the amount of the pecuniary loss sustained by the act, transaction, or proceeding out of which the penalty or forfeiture arose, with reasonable and actual costs occasioned thereby and such interest as may have accrued thereon according to law."

interest except that which accrues according to law—
it is exactly such interest that the "fundamental prin-
ciple" cuts off as of bankruptcy. Section 57 (n), 11
U. S. C. § 93 (n) requires governmental claims to be
proved in the same manner and within the same time
as other debts and only for cause shown may a reasonable
extension be granted. Tax claims are treated the same
as other debts except for the fourth priority of payment,
§ 64 (a), 11 U. S. C. § 104 (a), and the provision making
taxes nondischargeable, § 17, 11 U. S. C. § 35. But each
of these sections is silent as to interest.

The long-standing rule against post-bankruptcy inter-
est thus appears implicit in our current Bankruptcy Act.
To read into such a statute an exception to that rule
would be unwarranted and, as an original proposition,
we should decline to do so. However, the issue comes
here after forty years of bankruptcy administration under
the Act of 1898 followed by ten years under the 1938
Chandler Amendments. Petitioners contend that judi-
cial decisions during those periods have now been incor-
porated into a legislative policy allowing interest on tax
claims to payment, thereby producing a rule of law
beyond further judicial scrutiny.

It is contended that decisions under the Act of 1898
definitely established such a rule. And petitioners chal-
lenge the lower court's holding, despite those decisions,
that the Congress through the Chandler Act completed
the assimilation of taxes to debts and manifested an
intention that such claims be treated, interest-wise, the
same as other debts. They assert that the pre-Chandler
Act allowance of interest to date of payment was
grounded in judicial construction of § 57 (j), approved
at least *sub silentio* by this Court in *United States* v.
*Childs,* 266 U. S. 304, and adopted by Congressional
reenactment of that section in the Chandler Act. They

also contend that even after the Chandler Act the lower courts, and this Court in *Meilink* v. *Unemployment Commission,* 314 U. S. 564, affirmed the alleged prior interpretation of § 57 (j). In such a situation, it is said, the courts cannot modify what has now become legislative policy even though originally it may have been a judicially developed rule and one which now, as a matter of statutory construction, we should reject.

At the outset it may be admitted that in practice under the Act of 1898 the lower courts generally did allow interest on tax claims until paid. The parties and the lower courts trace that practice to *In re Kallak,* 147 F. 276, and cases following that decision. But we do not believe those cases support petitioners' contention that the pre-Chandler allowance of post-bankruptcy interest reflects a construction of § 57 (j). The *Kallak* opinion itself refutes that contention insofar as it may be based on that line of cases. The court there first decided that since § 64 (a) of the Act of 1898 [12] gave taxes absolute priority over claims of every kind, "public taxes do not constitute a 'claim' in bankruptcy." 147 F. 276, 277. The statute did not require that taxes be proved but that the trustee should seek them out and pay them in full. In view of that requirement and since taxes were not claims, the court saw no reason why the rule stopping interest on ordinary claims should apply. The court found that rule was based on considerations of expediency and practical

---

[12] "SEC. 64. DEBTS WHICH HAVE PRIORITY.—a The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, State, county, district, or municipality in advance of the payment of dividends to creditors . . . . b The debts to have priority . . . and to be paid in full out of bankrupt estates, and the order of payment shall be [(1) costs of preserving the estate (2) certain filing fees (3) administration expenses including attorney's fees (4) wages as specified (5) debts entitled to priority under state or federal laws]. . . ." 30 Stat. 544, 563.

convenience not present in the case of taxes. First, it said that allowance of such interest at the varying rates applicable to the different claims sharing the estate would prevent definite determination of each claimant's proportionate share. Secondly, such recurring readjustments would complicate administration of the estate. Since neither difficulty would result from allowing post-bankruptcy interest on taxes not sharing the fund with other obligations, the rule against such interest was held to be inapplicable. This conclusion was grounded entirely in reasons of practical convenience. If the case involved construction of any part of the Act of 1898, it clearly was § 64 (a) with its requirements of absolute priority in payment of "all taxes legally due and owing," which, together with the dispensation from proof, the court considered as indicating that taxes enjoyed a status entirely different from that accorded ordinary claims. Those provisions were considered controlling, while § 57 (j) was not mentioned in the opinion. Consequently the latter section's reenactment could not be considered a legislative adoption of any "judicial gloss" on that section resulting from the *Kallak* line of cases. The only section relied upon in *Kallak,* § 64 (a), has been significantly amended to deprive taxes of their preferred status, first by the amendment of 1926, and later by the Chandler Act. The former[13] expressly provided that taxes yield priority to administration expenses and certain wages, neither of which bear interest. The latter amendments finalized the subordination of taxes to other priority items. They also wrote into § 57 (n) the requirement of proof, formerly dispensed with under § 64 (a). Consequently the argument based on alleged Chandler Act recognition of lower court interpretations of § 57 (j) seems entirely without force. And, on the contrary, that enactment did

---

[13] § 15 of the Act of May 27, 1926, c. 406, 44 Stat. 662, 666.

significantly change the provisions of § 64 (a) which were decisive in *Kallak* and similar cases.[14]

Petitioners rely most heavily, however, upon this Court's decision in *United States* v. *Childs,* 266 U. S. 304, reversing *In re J. Menist & Co.,* 290 F. 947. It is urged that this decision reflected a construction by this Court of § 57 (j) which the Congress adopted in enacting the Chandler amendments. We do not believe this contention survives scrutiny of that case or that it is supported by the legislative history of the Chandler Act. The Court of Appeals stated that the only issue before it was "whether an exaction of 1 per cent. a month as the price of delay amounts to a penalty." 290 F. 947, 949. It decided that anything in excess of 6% per annum would be a penalty barred by § 57 (j). It is true that court also stated the allowable interest could run until payment. However, that statement was also based on the "highly preferred" status of taxes and the requirement of § 64 (a) that absolute priority be given to "all taxes legally due and owing." Section 57 (j) was con-

---

[14] *In re Ashland Emery & Corundum Co.,* 229 F. 829, relies entirely on § 64 (a) and the *Kallak* case. *In re Clark Realty Co.,* 253 F. 938, discusses § 64 (a) but not § 57 (j) and relies, erroneously, on *Dayton* v. *Stanard,* 241 U. S. 588, as to which see text. *In re J. Menist & Co.,* 290 F. 947, relying on § 64 (a), is discussed in the text. *In re A. E. Fountain, Inc.,* 295 F. 873, does not discuss the issue, deciding only that taxes bear simple interest. *Horne* v. *Boone County,* 44 F. 2d 920, discusses only whether the levy there was penalty or interest. *In re Martin,* 75 F. 2d 618, does not discuss the issue. *In re Semon,* 11 F. Supp. 18, modified 80 F. 2d 81, was based on the Revenue Act of 1928 and the Court of Appeals decided only that the levy there was not a penalty. *In re Beardsley & Wolcott Mfg. Co.,* 82 F. 2d 239, also involved only the penalty issue. Compare *In re William F. Fisher & Co.,* 148 F. 907, denying the claimed interest because § 64 (a) contained no provision allowing it; and *dictum* as to interest in *McCormick* v. *Puritan Coal Min. Co.,* 41 F. 2d 213, 214.

sidered as establishing that 12%, as a penalty, could not be allowed but that 6% was a "pecuniary loss" within the meaning of that section, and allowable as such, in full. But the Government challenged in this Court only the holding that the 12% interest was a penalty barred by § 57 (j). This Court reversed as to that point and the opinion makes it clear that it was the only issue considered and decided here. The question whether interest could run to payment, although discussed in respondent's brief on the merits, was not the issue which induced the Court to bring the case here, and it is not discussed in the opinion. We cannot agree that the case represents even a *sub-silentio* approval of allowance of post-bankruptcy interest. Even assuming, *arguendo,* such approval to be implicit in the decision, it would not help petitioners, relying solely on reenactment of § 57 (j), since we have shown the lower court's holding was based largely on provisions of § 64 (a) which have since been changed by the Act of 1926 and the Chandler Act.

Other decisions of this Court cited by petitioners on this point do not help their cause and require little discussion. *Dayton* v. *Stanard,* 241 U. S. 588, approved payment of interest to individuals who, during the course of a bankruptcy, paid off tax liens binding property of the bankrupt. The Court's decision was only that such parties, whose tax deeds were invalidated because at the time they were issued the property was *in custodia legis,* could be reimbursed out of the estate's general fund for both their advances and interest at the legal rate. This was simple equity since the claimants had paid taxes which the then § 64 (a) required the trustee to seek out and pay in full. *New York* v. *Jersawit,* 263 U. S. 493, is clearly a holding limited to the determination that the claim there asserted was a penalty not allowable under § 57 (j). The case was so described in the *Childs* opinion, 266 U. S. 304, 309, and the discus-

sion there confirms our conclusion that the latter decision was similarly limited to that point. *Coder* v. *Arts,* 213 U. S. 223, states as a subsidiary point only that, where the estate was adequate, interest could properly be allowed on a mortgage which the Court had held not to be a voidable preference.

It is thus clear that when the Chandler amendments were under consideration in Congress the reported cases established only that lower courts were allowing interest on tax claims until payment, either as a matter of practical convenience or because § 64 (a) gave those claims absolute priority and dispensed with proof. There was no basis for belief that the lower courts, much less this Court, had applied any judicial gloss to § 57 (j) requiring similar preferred treatment, interest-wise, for tax claims. If any conclusion could have been drawn from the cases it was that § 64 (a) might have justified a judicial belief that taxes need not be considered, for any purpose, the same as other debts. And, as we have seen, both significant provisions of that section were amended with adverse effects on the status of tax claims. Consequently, reenactment of § 57 (j) does not support petitioners' position on this issue. This conclusion is confirmed by the complete lack of any indication in the legislative history that Congress considered § 57 (j) in this connection. Petitioners are in fact asserting that adding to an alleged *sub-silentio* ruling here on § 57 (j) Congressional silence in reenacting that section precipitated a legislative command that post-bankruptcy interest be allowed on tax claims which, at the same time, were deliberately being reduced to the level of other debts. Mere statement of the proposition indicates its rejection.

The Court of Appeals concluded that by the 1926 amendment and the Chandler Act, Congress assimilated taxes to other debts for all purposes, including denial of post-bankruptcy interest. We think this is a sound and

338

logical interpretation of the Act after those amendments to §§ 64 (a) and 57 (n). Considered in conjunction with the general rule against post-bankruptcy interest [15] as well as § 63's limitations of interest on other claims to date of bankruptcy, they compel our conclusion, already stated, that the statute as amended did not contemplate any exception in favor of tax claims.

Petitioners' final contention is that even after the Chandler Act the lower courts continued to allow post-bankruptcy interest, that this Court in *Meilink* v. *Unemployment Commission,* 314 U. S. 564, approved the practice, and that Congressional recognition of that interpretation is reflected in an unsuccessful attempt to modify § 57 (j). It may be admitted that lower courts, other than the one whose judgment is now being reviewed, did continue to allow such interest after the 1938 amendment.[16] But this Court has not, in the *Meilink* case or otherwise, passed on the question. That case involved the same issue that had been presented in *Childs:* whether or not the interest there challenged was in fact a penalty proscribed by § 57 (j) which had been left substantially unchanged by the Chandler Act. We decided only that question.

But, irrespective of that decision, petitioners contend that Congress has considered the lower courts' post-Chandler Act decisions as a statutory interpretation which can be overruled only by legislation. The argu-

[15] See note 7 and text; and see *Thomas* v. *Western Car Co.,* 149 U. S. 95; *Sexton* v. *Dreyfus,* 219 U. S. 339; *American Iron Co.* v. *Seaboard Air Line,* 233 U. S. 261.

[16] See, for example, *In re L. Gandolfi & Co.,* 42 F. Supp. 706; *In re Flayton,* 42 F. Supp. 1002; *Davie* v. *Green,* 133 F. 2d 451. But see Referee's decision, *In Matter of Union Beverage Co.,* 50 Am. B. R. (N. S.) 825, 829. And see discussion by the court below in *Hammer* v. *Tuffy,* 145 F. 2d 447, 449, and in *United States* v. *Roth,* 164 F. 2d 575, 577–578.

ment is based on a Committee Report accompanying a bill approved by the House during the 80th Congress but not acted upon in the Senate. Among Bankruptcy Act amendments proposed in this bill was one designed "both to clarify and modify" § 57 (j). The change, it was said in the House Report, was to make it clear that the section referred to interest on the "pecuniary loss" and that such interest stops at bankruptcy. The clarifying clause was "intended to overrule an obsolete rule" as to interest on delinquent taxes. It was stated that although §§ 64 (a) and 57 (n) as amended by the Chandler Act rendered the reasoning of the *Kallak* case obsolete, nevertheless its rule had not been changed and legislation was necessary, citing *Davie* v. *Green,* 133 F. 2d 451, the case which conflicts with the decision now being reviewed. The text of the section of the report devoted to this proposed amendment is printed in the margin.[17] We

---

[17] "11. Section 11 (a) of the bill is intended both to clarify and modify section 57j of the act. The change in 57j (c) is to make clear that the limitation on interest 'up to the date of bankruptcy' relates only to interest on the 'pecuniary loss,' and further that such interest stops at the date of bankruptcy. The addition of clause (2) in the bill is intended to overrule an obsolete rule as to interest on delinquent tax debts. Interest on general unsecured debts, on unsecured Government debts other than taxes, and on debts entitled to priority under section 64a, is suspended at the date of bankruptcy so that, except in the rare case of a solvent estate, interest is allowable only to such date. (Sec. 63a; *Adams* v. *Napa Cantina Wineries* (C. C. A., 9th Cir.), 36 Am. B. R. (N. S.) 8; *In re Gandolfi & Co., Inc.* (S. D., N. Y.), 51 Am. B. R. (N. S.) 521 (governmental debts and other debts entitled to priority); 3 *Collier on Bankruptcy,* 14th Ed., 1835 *et seq.;* 2 *Remington on Bankruptcy,* 4th Ed., secs. 771, 795.) However, interest on delinquent tax debts is allowable to the date of payment (*In re Kallak* (D. C., N. D., 1906), 17 Am. B. R. 414; *In re Ashland Emery and Corundum Co.* (D. C., Mass., 1916), 36 Am. B. R. 194; *In re Clark Realty Co.* (C. C. A., 7th Cir., 1918), 42 Am. B. R. 403; *sub silentio, United States* v. *Childs,* 266 U. S. 304, 307 (1924), 5 Am. B. R. (N. S.) 5). Although, under the Chandler

believe a fair reading of it leads to the conclusion that the Committee believed, not that the Chandler Act either allowed post-bankruptcy interest or left the matter open, but that the courts in allowing such interest were ignoring the necessary and intended implications from the Chandler amendments to §§ 57 (n) and 64 (a). The court below did not have this report before it, but in a well-considered opinion reached the same conclusion. We believe that conclusion is confirmed by the report and that petitioners' contentions find no support in either the Chandler Act or this abortive attempt at clarification.[18]

---

Act, a tax debt is required to be proved (sec. 57n) and its order of priority ranks below all administration costs and expenses, wages and costs and expenses of creditors successfully opposing a settlement or discharge, or procuring a conviction for an offense (sec. 64a (1), (2), (3)), thereby rendering obsolete the reasoning in the *Kallak* case, nevertheless its rule has not been changed, and therefore requires this statutory modification. For further discussion see *In re D. O. Summers* (Ref., N. D., Ohio, 1939), 46 [45] Am. B. R. (N. S.) 123; *In re Dorsey* (Ref., W. D., Wash., 1940), 46 Am. B. R. (N. S.) 146; *Davis[e]* v. *Green* (C. C. A. 1st Cir., 1943), 52 Am. B. R. (N. S.) 603. And on overruling the *Kallak* case see *In re Union Fabrics, Inc.*, (S. D., N. Y., 1947), 73 F. Supp. 685, appeal pending.

"The Judicial Conference has more than once expressly approved this amendment to section 57j. Its most recent reaffirmation of its position was in October 1946. (See Report of the Judicial Conference, October 1946, p. 15.) The Administrative Office of the United States Courts has stated that the language of section 11 of the bill is satisfactory on this score." H. R. Rep. No. 2083, 80th Cong., 2d Sess., p. 5.

[18] The United States cites, as confirming the construction it has placed on § 57 (j), federal taxing statutes beginning with the Revenue Act of 1924 which direct that upon nonpayment of the tax there shall be added, as part of the tax, interest at the specified rate from due date to date of payment. It has been held that federal taxes ordinarily bear interest even in the absence of statute. See *Billings* v. *United States*, 232 U. S. 261, 284–288. But we do not think either such a rule or statutory provision could be permitted to negative the

The case thus presents only the conflict between two Courts of Appeals as to the proper interpretation of the current statute. We agree with the court below and resolve the conflict by affirming its judgments.[19]

*Affirmed.*

MR. JUSTICE REED dissents for the reasons given in *Davie* v. *Green,* 133 F. 2d 451.

---

Bankruptcy Act's requirement in that respect if the latter be to the contrary, as we think it is. That Act was early held to take into consideration "the whole range of indebtedness of the bankrupt, national, state and individual," *Guarantee Co.* v. *Title Guaranty Co.,* 224 U. S. 152, 160, and to have been passed "with the United States in the mind of Congress," *Davis* v. *Pringle,* 268 U. S. 315, 317. We do not believe the Revenue Act of 1924 and similar enactments were intended to amend the comprehensive scheme of the Bankruptcy Act, with an effect clearly contrary to specific amendments such as the Act of 1926 and the Chandler Act. This would indeed be a strange way to require, as it would, that federal tax claims be preferred over state and municipal claims when the Bankruptcy Act itself treats all tax claims equally. This contention, standing by itself, or in support of the argument based on § 57 (j), cannot be accepted.

[19] Since we have concluded that neither the alleged legislative treatment of this issue nor prior rulings of this Court support the contrary result, this decision involves no consideration of the principle of *stare decisis.* If it did, the responsible exercise of the judicial process, *Helvering* v. *Hallock,* 309 U. S. 106, 119, would dictate that the express principles and logical implications of the Chandler Act prevail over earlier inconclusive lower court holdings and Congressional failure to correct them.