**In re HUFF CO.**
No. 32115.

United States District Court
E. D. Michigan, S. D.

Nov. 21, 1950.

Conlin, Conlin & Parker, Ann Arbor, Mich., for petitioner.

Edward T. Kane, U. S. Atty., Henry M. Gottlieb, Asst. U. S. Atty., Detroit, Mich., for claimant.

KOSCINSKI, District Judge.

### Findings of Fact

1. A petition for arrangement was filed by the debtor on June 15, 1949, under Chapter XI of the Bankruptcy Act, as amended, 11 U.S.C.A. § 701 et seq., and a Plan of Arrangement was accepted and confirmed. The Plan divided unsecured creditors into three classes, Class I including "all debts which have priority under Section 64, sub. a(2), (4), (5) of the Acts of Congress relating to bankruptcy [11 U.S.C.A. § 104, sub. a(2, 4, 5)]" such debts to be paid in full "upon the confirmation of the plan and its acceptance by the required number of creditors."

2. The following claims were filed by the United States:

a. Claim for employment and withholding taxes with assessed interest for the years 1946, 1947, and 1948, in the amount of $4,096.79 filed August 18, 1949;

b. Claim for income taxes for 1944, 1945, and 1947, and employment taxes for 1949, including assessed interest aggregating $1,322.71, filed September 2, 1949; and

c. Claim for employment taxes for 1946 and 1949 in the amount of $180.36, filed December 23, 1949.

All these claims included interest from dates specified therein, to date of payment of the taxes.

3. Objections to the claims were filed November 8, 1949. After hearing the claims and objections thereto, the Referee in Bankruptcy filed an order on May 18, 1950 denying interest on the claims subsequent to the filing of the petition for an arrangement.

4. A deposit was made by the debtor for payment of priority claims, in accordance with provisions of the Act, and payment of $4,096.79 out of the fund deposited was made to the United States to cover principal and assessed interest on the first claim.

5. This matter is now before this court on the petition of the United States for review of the Referee's order of May 18, 1950 disallowing interest on the claims of the United States subsequent to the time of filing the petition for arrangement.

■ 6. The debtor and creditor in this instance both agree that, under the recent decision of City of New York v. Saper, Trustee, 336 U.S. 328, 329, 69 S.Ct. 554, 93 L.Ed. 710, the Government is entitled to interest in tax claims only to date of bankruptcy; both agree, also, that in view of Sec. 302 of Chapter XI, the provisions of Chapters I to VII, inclusive, of the Bankruptcy Act, 11 U.S.C.A. §§ 1–112, apply to arrangement proceedings, insofar as they are not inconsistent with or in conflict with the provisions of Chapter XI.

7. The debtor contends that the very provisions giving preference to tax claims and other preferred creditors in the general bankruptcy statutes are the same provisions which also apply to Chapter XI and make no exception that priority debts should be treated differently under Chapter XI.

8. The United States, as creditor, contends that insofar as application of such sections of the general bankruptcy statutes may deprive absolute priority to priority creditors, they are inconsistent and in conflict with the provisions on arrangements since the absolute priority rule applies in arrangement proceedings and as priority creditor it is entitled to full payment of its claim, including interest to date of payment, before estate funds can be applied to payment of claims not enjoying such priority

or permitted to inure to the benefit of the debtor.

## Conclusions of Law

1. As originally patterned on the English system, our bankruptcy procedure provided only the harsh remedy of liquidation for harassed debtors. After England adopted its more modern scheme of arrangements, changes in our laws followed closely those of England and introduced the new philosophy of rehabilitating honest debtors as a better method of serving society in many instances than liquidating their estates. Chapter XI, dealing with arrangements, is now recognized as one of the rehabilitation divisions of our present bankruptcy system.

2. It is conceded by counsel that the general provisions of the Bankruptcy Act apply to arrangement where not inconsistent with or in conflict with provisions of Chapter XI. The general provisions, patterned for liquidation purposes, would, therefore, be inconsistent with and in conflict with a pattern for arrangement in some respects, in which case Chapter XI supplies procedure for rehabilitation by arrangement, rather than liquidation.

3. The United States, as debtor, filed its claim under Sec. 57, sub. a and secured priority under Sec. 64 of the general provisions, 11 U.S.C.A. §§ 93, sub. a, 104, made applicable to arrangements by Sec. 302. It contends, however, that not all provisions of those sections are consistent with provisions in Chapter XI, particularly as to time for filing claims, and that the same rationale which applies to claims in bankruptcy does not apply to claims filed in arrangement proceedings.

4. A petition for arrangement may be filed either in original proceedings for arrangement or in pending bankruptcy actions. If bankruptcy proceedings are pending, the time for filing claims is governed by the general bankruptcy provisions; since some time limit for filing claims must also be set in independent arrangement cases where no bankruptcy proceedings are pending, Chapter XI supplies that time limit, just as it supplies rules for guidance in pro-

ceeding with arrangements on which the general bankruptcy provisions are silent.

5. That creditors in a Chapter XI proceeding acquire no greater rights than those under the general bankruptcy laws, except as specifically provided in Chapter XI, is borne out by the specific provisions of Sec. 352 in Chapter XI, that where not inconsistent with provisions of Chapter XI, the rights, duties and liabilities of creditors and of all other persons wth respect to the property of the debtor shall be the same, where an original petition for arrangement is filed, as if a voluntary petition for adjudication in bankruptcy had been filed and a decree of adjudication had been entered at the time the petition for arrangement was filed.

[redacted] 6. Decisions of various courts in comparable proceedings on the question of interest on claims are reviewed in 69 A.L.R. 1210, and the general rule is stated as follows: "As a general rule, interest is not allowed against an estate during the period covered by bankruptcy or other insolvency proceedings, the rule being placed upon the grounds that, the delay being the act of the law, no one should gain an advantage thereby."

7. The case of Consolidated Rock Products Co. v. DuBois, 312 U.S. 510, 61 S.Ct. 675, 85 L.Ed. 982, cited by the creditor as authority for the principle that under the absolute priority rule, accrued interest is entitled to the same priority as principal, involved a reorganization plan which ignored some $400,000 interest on bonds of creditors which had accrued prior to the filing of the petition and is not helpful in determining the question of a creditor's right to claim post-bankruptcy interest. In the instant case, interest was allowed on the Government's claim to date of filing of the petition for arrangement.

[redacted] 8. The creditor contends that delays before final completion of arrangement proceedings would deprive priority creditors of considerable interest before payment of their claims, and that a plan of arrangement which does not provide for full payment of priority claims, including interest to date of payment, is not a fair and equitable plan. All litigation often involves delays. A bankruptcy court, being a court of equity, is guided by equitable doctrines and principles not inconsistent with the Bankruptcy Act in adequately protecting interest of all parties involved and minimizing necessary delays. Confirmation of plans of arrangement follows only after determination that the arrangement and acceptance were made in good faith, that it is for the best interests of creditors, and that the plan is a fair, equitable, and feasable one. It is for the bankruptcy court to determine in each case whether the plan, under the circumstances existing in that case, is a fair and equitable one.

9. The court may deem it equitable, under proper circumstances in arrangement proceedings, to preserve the going-concern value of a business as compensation for reduction of the claims of prior creditors, even without alteration of the management's interests.—Securities and Exchange Comm. v. U. S. Realty & Improvement Co., 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293. The rule of absolute priority is not, therefore, such a rigid and inflexible one as to compel its application to the extent urged by the Government in this case.

10. Sec. 337(2) of Chapter XI requires the court to fix the amount of deposit by the debtor for payment of priority claims and therefore suggests, at least, that the debts be fixed and ascertainable as to amount at a given date. Orderly administration of the debtor's estate would be considerably hampered if a contrary view were taken, by requiring continual re-financing to furnish additional amounts for interest accruing between the time initial attempts are made by loans or otherwise to furnish the amount of deposit, and actual deposit of the funds.

11. The general rule disallowing post-bankruptcy interest appears to this court to be an equitable one, not only in bankruptcy cases aimed at liquidation but those involving arrangements. The fact that some slight advantage may inure to the benefit of the debtor through its application is not inconsistent with the general policy of our bankruptcy system as expressed in the first paragraph of these conclusions.

[redacted] 12. It is the opinion of this court that the United States, as creditor, is not

entitled to post-bankruptcy interest on the claims filed herein on its behalf by the Commissioner of Internal Revenue.

## Order

The order of the Referee in Bankruptcy filed on May 18, 1950, disallowing post-bankruptcy interest on the Government claims, is confirmed.