## In re D.C. SULLIVAN & CO., INC., Bankrupt.

### Bankruptcy No. 70–614–G.

United States Bankruptcy Court, D. Massachusetts.

Dec. 31, 1986.

See also, Bkrtcy., 69 B.R. 212.

Mark Berman, Widett, Slater & Goldman, Boston, Mass., for Robert Robinson, Trustee.

Daniel F. Featherston, Law Office of Daniel F. Featherston, Benjamin Goldman, Goldman & Goldman, Boston, Mass., pro se.

*OPINION*

JAMES F. QUEENAN, Jr., Bankruptcy Judge.

Daniel F. Featherston, Jr. ("Special Counsel") moves to be paid additional compensation measured by a *pro rata* share of the income earned in the investment of certain settlement proceeds. Robert Robinson, the trustee in bankruptcy (the "Trustee"), opposes the motion except to the extent that it seeks interest earned during the period following the Court's order of September 19, 1984 allowing Special Counsel's compensation. For the reasons set forth herein, we allow interest only for this period.

This bankruptcy case is very old, having been initially filed as an involuntary petition in bankruptcy on May 22, 1970 under the Bankruptcy Act of 1898, as amended, 11 U.S.C. § 1 *et seq.* (repealed 1978) (the "prior Bankruptcy Act"). By order dated July 31, 1970, Benjamin Goldman ("Goldman") of the law firm of Goldman and Goldman was appointed special counsel to institute fraudulent transfer litigation against Watts Detective Agency, Inc. and others. That order stated that the compensation to be paid to Goldman and his assistants "shall, exclusive of costs and expenses, be contingent upon a recovery from any of the actions instituted ... and shall be in an amount equal to thirty-three and one-third (33⅓%) percent of the amount recovered in such actions." Shortly before trial, Goldman was informed by defendants' counsel that he would be called as a witness. Special Counsel was thereafter employed to try the case. His employment was not authorized until many years later when on May 14, 1982, the bankruptcy judge entered a *nunc pro tunc* order authorizing the employment and stating that

Special Counsel's compensation "shall, exclusive of costs and expenses, be contingent upon a recovery in the action ... and shall not increase the total attorney's fees which would then be awarded herein, but be a part thereof, all in accordance with the previous order of this Court, dated July 31, 1970." *In re D.C. Sullivan & Co., Inc.,* No. 70–614–G (Bankr.D.Mass. May 14, 1982) (order appointing special counsel *nunc pro tunc*).

At the time this last order was entered, a jury had returned a favorable verdict and judgment had been entered thereon in the sum of $750,000 plus interest, from which appeals were taken. The First Circuit thereafter affirmed the judgment in *Robinson v. Watts Detective Agency, Inc.,* 685 F.2d 729 (1st Cir.1982). Petitions to the Supreme Court for writs of certiorari followed, and the case was eventually settled by payment of $930,000 to the Trustee in four installments made in April and May of 1983. Those sums represented the estate's only asset except for a few thousand dollars. The Trustee immediately placed the sums received at interest, without any segregation or separate account for anticipated legal fees.

Applications for compensation were promptly filed by Special Counsel and the other counsel involved in the *Watts* litigation on behalf of the Trustee, including Goldman. Pending these applications, the Court awarded Special Counsel interim compensation of $75,000. A delay occurred in the Court acting upon Special Counsel's application, caused primarily by Goldman's opposition to Special Counsel's requested fee, which required several hearings and various appeals.

On September 19, 1984 the Court, through a predecessor judge, in a lengthy opinion awarded final compensation to all counsel involved in the *Watts* litigation in the total sum of $305,195.75, of which, $194,690.00 (plus expenses of $3,950.75) was awarded to Special Counsel, subject to a credit of $75,000 for the interim compensation already received. The Court direct-

ed the Trustee to pay Special Counsel the balance due "forthwith." *In re D.C. Sullivan & Co., Inc.*, 69 B.R. 737, 742 (Bankr.D. Mass.1984). Co-counsel to the Trustee, and Goldman, also shared in this award. Thereafter Special Counsel moved to amend the order of September 19, 1984 (the "September 19th order") to have it provide that all four counsel receiving compensation thereunder share *pro rata* in the interest earned from the settlement proceeds. By order dated October 11, 1984 (the "October 11th order") the Court stated: "[T]he question of whether Mr. Featherston and the others are entitled to interest is premature, as it is unclear whether there are funds available to pay interest to any party. Accordingly, the motion is DENIED without prejudice to the right of Mr. Featherston to renew the motion after all timely filed claims and fee awards are paid in full (excluding interest)." *In re D.C. Sullivan & Co., Inc.*, No. 70–614–G (Bankr.D.Mass. Oct. 11, 1984) (order denying without prejudice Motion to amend prior fee order to include interest award).

Further delay occurred. Goldman appealed the September 19th order, arguing that the compensation awarded him was too low and the sum awarded Special Counsel was too high. Special Counsel sought an order compelling the Trustee pay him pursuant to the September 19th order. The Trustee sought instructions concerning obligations under the September 19th order. On December 17, 1984 the Court issued yet a further order in which it reaffirmed the September 19th order which had directed the Trustee to pay Special Counsel the balance of his compensation "forthwith." The Court at the same time denied Goldman's motion for a stay of the September 19th order, basing its decision both on the merits and on the ground that Goldman had not requested the stay until October 23rd. On December 20, 1984, the Trustee paid Special Counsel the balance due under the September 19th order.

## DISCUSSION

Special Counsel argues that he is entitled to a *pro rata* share of the interest earned from the settlement proceeds of $930,000. He relies upon *Boston and Maine Corp. v. Moore*, 776 F.2d 2 (1st Cir.1985). In that decision, the First Circuit approved payment of interest to counsel on a portion of a $3 million deposit which had been created for the specific purpose of paying outstanding claims arising from the reorganization, including claims for attorney fees. The court recognized that in a bankruptcy proceeding counsel do not have rights to payment until fees have been approved by the bankruptcy judge, but the court believed it appropriate for counsel to share in the accrued interest if some of the money was earmarked for payment of counsel. *Boston and Maine Corp. v. Moore*, 776 F.2d at 13. It remanded the matter to the district court, however, because of the implications that its decision might have upon the rights of other counsel to fees.

Special Counsel contends that the Court's authorizing his employment earmarked a portion of the settlement proceeds for him every bit as much as the debtor in *Moore* earmarked a separate account for priority claimants. He points to the orders of this Court of July 30, 1970 and May 14, 1982 both of which established the compensation of counsel involved in the *Watts* litigation at one-third of the recovery. Somewhat inconsistently, he now contends that only his portion of the compensation should be entitled to a *pro rata* share of the interest earned on the deposit, although his original motion filed after the September 19th order sought interest for all four counsel involved in the litigation. He justifies this change in position by stressing the delays which were caused by other counsel, particularly Goldman. He ignores the fact that the Court in its September 19th order divided the compensation among counsel based exclusively upon hourly rates, albeit in a total amount which was only slightly less than one-third of the $930,000 settlement figure.

Special Counsel's reliance upon *Moore, supra*, is misplaced. There the deposit had

been set aside for the sole purpose of paying priority claimants, including counsel. The amount of the deposit had been calculated by taking into account the fee applications then pending, including that of the lawyer before the court. Although the First Circuit held that the district court had not abused its discretion in refusing to award counsel compensation for delay in payment, it was "troubled" by the existence of the separate account. The court believed that because a separate interest-bearing account had been set up by the estate for the *specific* purpose of paying administrative priority claimants, counsel should, as an equitable matter, be awarded the *pro rata* interest on the deposit as some compensation for the delay which had occurred. The court felt that "[f]or parties other than for whose benefit the fund was established to receive the interest that has accrued ... strikes us as an undeserved windfall to them." *Moore,* 776 F.2d at 13.

Here, the circumstances are not so clear cut. The settlement proceeds went into an account established for the benefit of the entire estate, not just one class of claimants. Special Counsel, however, claims that the Court's prior orders employing Goldman and Special Counsel had the effect of earmarking one-third of the funds for their claims. The Court's prior orders may well have given them contractual rights to one-third of the settlement, subject to the rights of the other two counsel who eventually received fees in the *Watts* litigation. This case is governed by the prior Bankruptcy Act, which contained no specific provision on the question. However, the present Bankruptcy Code does contain such a provision, and it is somewhat instructive here. Counsel may be hired under the present Bankruptcy Code "on a contingent fee basis." 11 U.S.C. § 328(a). Although the court may later change the compensation terms, it may do so only if the original compensation terms "prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms...." 11 U.S.C. § 328(a). The effectiveness of contingent fee arrangements

has been recently approved under the prior Bankruptcy Act, even in the absence of a court order fixing the contingent fee at the time of initial employment. *Boston and Maine Corp. v. Sheehan, Phinney, Bass & Green,* 778 F.2d 890 (1st Cir.1985). It is true that the September 19th order does not base its total award on a simple one-third compensation, nor is the amount awarded precisely equal to this sum. Nevertheless, the Court must have had the original employment orders in mind; we doubt that the proximity of the amount of the award to one-third of the settlement is a coincidence. We therefore assume, for the purpose of the question now before the Court, that there was a one-third contingency arrangement which was operative at the time of the settlement.

Even under that assumption, however, Special Counsel's argument has ramifications which go far beyond traditional principles of compensation in bankruptcy cases. If litigation counsel is entitled to interest because of such "earmarking," we are hard pressed to find a reason why the Trustee is not also so entitled. His fee, unquestionably, is calculated based upon percentages of the estate. Under Special Counsel's reasoning, the remaining two-thirds of the account was also impressed with a claim of the Trustee for his own percentage compensation. We are aware of no authority for awarding a trustee interest on such a theory. Nor does the Trustee make any such argument.

It would, moreover, be just a short step further to conclude that counsel who are compensated at an hourly rate should also share in the interest on such a deposit in proportion to their fees earned at the time of the deposit and allowed by the court before or after the deposit. Their compensation is easily approximated, and it would seem to place form over substance to allow interest only to counsel compensated on a one-third contingency basis. The impact of adopting such a theory would also extend to non-priority creditors of the estate. Such creditors could claim that when the Court established the validity of their

claim, a *pro rata* share of the interest earned on the funds of the estate should be allocated to their claim.[1]

The Court declines to adopt Special Counsel's theory on what constitutes "earmarking." The Court must, in its consideration of claims against the estate, ensure that equity serves both the individual claimant and the other claimants against the estate. This is particularly true in the award of post-petition interest, in which the Court must balance the "equities between creditors and creditors[,] or creditors and the debtor." *Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 165, 67 S.Ct. 237, 241, 91 L.Ed. 162 (1946). Special Counsel has failed to demonstrate why his claim to one-third of the settlement proceeds is any different than that of any other claimant whose "stake" in the estate has been carved out by a court decision or by statute. This case is not the *Moore* situation, where a portion of the estate had been physically separated from estate funds and set aside for a specific class. The equities in *Moore* are not the equities in this case.

Furthermore, at the time of the deposit, Special Counsel's share of the fee in the *Watts* litigation was unknown. Obviously he had to share this fee at least with Goldman, who had been originally hired for the case and who had done substantial work preparing it. And, as determined by the Court, co-counsel to the Trustee was also entitled to a share. Special Counsel now argues that these others are not entitled to interest on the deposit because their conduct, primarily Goldman's, caused the delay. We agree that they have no right to interest, but for the additional and basic reasons herein discussed.

Moreover, earmarking general estate deposits for counsel is inconsistent with rules governing the rights of creditors to interest. As we have discussed, this Court's acceptance of Special Counsel's position that he is entitled to interest on one-third of the deposit would confront the Court with the problem of whether other creditors are entitled to *pro rata* shares of the interest earned on the remaining two-thirds of the deposit. It was well established law under the Bankruptcy Act of 1898, however, that creditors' claims accrue interest only in the unusual case, present here, where there is a surplus remaining after a 100% dividend. *City of New York v. Saper,* 336 U.S. 328, 330 n. 7, 69 S.Ct. 554, 555 n. 7, 93 L.Ed. 710 (1949); *Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 164–65, 67 S.Ct. 237, 240–41, 91 L.Ed. 162 (1946). *See* 11 U.S.C. § 103(a)(5) (repealed 1978). Interest accrues, moreover, from the date of the original bankruptcy filing, *see In re Imperial '400' National, Inc.,* 374 F.Supp. 949, 953–54 (D.N.J.1974), and at the "legal rate" or the "statutory rate" for claims which have no contractual interest rate,[2] *Muskegon Motor Stockholders Protective Committee v. Davis (In re Muskegon Motor Specialties),* 366 F.2d 522, 529 (6th Cir.1966); *In re Imperial '400' National, Inc.,* 374 F.Supp. at 954; *In re Norcor Mfg. Co.,* 36 F.Supp. 978, 980 (E.D.Wisc.1941), not from the date of an investment of funds at the rate paid by the investment.

Special Counsel also asserts that the predecessor judge did not consider the delay in payment of compensation in determining the amount of compensation under the September 19th order. He urges the Court to do so now, and to award him interest as compensation for the delay. The Trustee contends that the Court did consider the delay in payment in the September 19th order in calculating the loadstar. We agree with the Trustee. The September 19th order, in considering the various fee applications, stated that a loadstar fee arrived at by multiplying hours of ser-

---

1. In fact, such an argument would be spurious under the Bankruptcy Act of 1898. Section 63(a)(5) clearly prohibits such a result. 11 U.S.C. § 103(a)(5) (repealed 1978).

2. Because the matter is not before us at this time, we do not express an opinion on what is a "statutory" or "legal" rate in this case. *See In re Imperial '400' National,* 374 F.Supp. at 954 n. 9 (law is unsettled about what constitutes a "legal" rate).

vice times hourly rate could be increased by an adjustment designed to compensate for the delay. September 19th order, 69 B.R. at 740–41; *see Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 955 (1st Cir.1984).[3] Although the Court concentrated primarily on one factor, the quality of representation, it stated at the outset that it had "considered the [loadstar] with regard to each applicant." September 19th order, at 741. The Court then failed to make an adjustment for delay in payment in the award to Special Counsel. The question was clearly before the Court then, and the September 19th order is now the law of the case.

Nor do we believe that the October 11th order (declining to rule on the *pro rata* interest sharing theory) affected in any way the September 19th order. The October 11th order, which denied Special Counsel's motion without prejudice because it was "unclear whether there are funds available to pay interest to any party," apparently had in mind that all creditors might eventually be entitled to interest under traditional principles because of the existence of a surplus.

### INTEREST AFTER THE SEPTEMBER 19TH ORDER

We take a different view with respect to Special Counsel's right to interest after the September 19th order. We believe that he should receive interest accrued on the fund thereafter, not on a theory of *pro rata* sharing of interest on the deposit, but rather on general equitable principles.

The September 19th order required the Trustee to "forthwith" pay Special Counsel and other counsel the balance determined to be due them. Goldman, predictably, appealed. No stay of the Court's order was ever granted pending this appeal. In fact, as determined by the Court in its order of December 17, 1984, Goldman's October 23rd motion for a stay was untimely. The Trustee nevertheless refused to pay Special

Counsel because of the Goldman appeal. Although recognizing that no stay was in effect, the Trustee requested instructions from the Court. He expressed concern that payment followed by a reversal of the September 19th order might require him to seek a refund from Special Counsel and subject him to claims for breach of his fiduciary duty owed to creditors and stockholders. As the Court observed in its December 17th order, citing *In re Combined Metals Reduction Co.*, 557 F.2d 179, 190 (9th Cir.1977), a trustee can hardly be faulted for obeying a court order, absent a stay of that order. Moreover, the question of payment would then moot an appeal, as indeed the district court later ruled.

In short, in its order of December 17, 1984 the Court ruled that the Trustee had unreasonably delayed payment to Special Counsel. We agree with that order which, in any event, is the law of the case. Assuming unavoidable delays in communication and action, the "forthwith" compliance with that order would have placed $123,640.75 in the hands of Special Counsel no later than five days after the September 19th order, that is, by September 24, 1984. He is entitled to interest from then until the date he was paid, December 20, 1984, at the rate earned on the Trustee's largest deposit, which was with Patriot Bank, N.A.

In ruling that Special Counsel is entitled to interest for the period following the September 19th order, we do not rest our decision upon any theory that a *pro rata* portion of any deposit was earmarked for Special Counsel during this period. For the reasons previously set forth, we regard the principle of the *Moore* decision as being equally inapplicable to the period following the September 19th order. Nor do we rely upon any principle favoring accrual of statutory interest for post-filing indebtedness in the same manner that pre-filing indebtedness is entitled to accrual of interest. It may be that the holder of post-filing indebtedness is entitled to interest for the same

---

**3.** By separate order we have made such an adjustment to compensation awarded to the Trustee's general counsel by calculating that

counsel's compensation at current hourly rates rather than at the rates charged when the services were rendered.

reason that the holder of pre-filing indebtedness is entitled to interest up to the time of filing, because it is inherent in the nature of indebtedness. Some courts have so held. *See, e.g., In re Mesa Refinery, Inc.,* 66 B.R. 36 (Bankr.D.Col.1986). *Cf. St. Paul Fire & Marine Co. v. Vaughn,* 779 F.2d 1003, 1010 (4th Cir.1985) (court approval of attorney's fees application and subsequent award of fees in bankruptcy is not a "money judgment" under 28 U.S.C. § 1961 and therefore no interest on the award is recoverable under that statute); *United States v. Larchwood Gardens, Inc.,* 420 F.2d 531, 533–34 (3d Cir.1970) (The mere fact that receivers delayed payment of a fee award because of an appeal on the award does not justify an award of interest on the receiver's fee on the grounds of "justice, equity, and good faith").

We base our decision, rather, on general equitable considerations related to the particular circumstances of this case. *See In re Holiday Mart, Inc.,* 35 B.R. 183, 185 (Bankr.D.Haw.1983). Payment to Special Counsel was unduly prolonged. He first had to wait for court approval of the compromise, which involved a delayed appeal. He thereafter filed his fee application, only to have a hearing on the application delayed by an unseemly contest, initiated by Goldman, concerning who was entitled to what portion of a previous award of interim compensation. Then followed a further delay after the September 19th order, for no good reason. Once Special Counsel's fee had been established by the September 19th order without a stay of that order being in effect, he should not be made to suffer this final delay without compensation. Equitable considerations compel that he thereafter receive interest at the rate earned by the estate's deposit. *Cf. United States v. Larchwood Gardens, Inc., supra; In re Meade Land and Development Co., Inc.,* 5 B.R. 464 (Bankr.E.D.Pa.1980) (party partially responsible for delay should not receive interest on award).

Counsel for the Trustee has informed the Court that he will likely ask the Court to decide whether those creditors who are entitled to priority, such as Special Counsel, also have priority rights to receive interest at the statutory or legal rate. We will decide that question when it is presented to us, and we make no attempt to decide it here. To the extent, however, that it is later determined that Special Counsel would otherwise have the right to receive interest for the period both before and after the September 19th order, the interest awarded him by today's order shall be set-off against the same.

SO ORDERED.