**In re Edythe S. TURGEON, Debtor.**

**Bankruptcy No. 84–10648 K.**

United States Bankruptcy Court,
W.D. New York.

· June 29, 1993.

Robert S. Lesher, East Aurora, NY, for debtor.

Jane B. Wolfe, Asst. U.S. Atty., Buffalo, NY, for I.R.S.

### DECISION AND ORDER

MICHAEL J. KAPLAN, Chief Judge.

### INTRODUCTION

Before the Court is a motion under Section 505(a) of the Bankruptcy Code (11 U.S.C. § 505(a)) to determine the Federal income tax liability of Edythe Turgeon ("Debtor"). The case is unusual in that after many years of battle, the IRS has agreed with her original 1979 and 1980 income tax returns. However, she never paid the 1980 liability that she had declared, and she now complains of the running of post-petition interest thereon. Rejecting the Debtor's arguments, the Court finds that the Debtor is liable for unpaid post-petition interest on her 1980 federal income tax liability.

## FACTS

The Debtor filed a Chapter 11 petition on April 3, 1984. The IRS filed its first proof of claim in the Debtor's case on July 25, 1984. Among the claims it asserted was income tax liability for 1979 of $531,868 and pre-petition interest of $343,000 thereon. This alleged liability arose from the fact that the IRS had disallowed her deduction for losses on commodity tax straddles. Although the Debtor believed that she had fully paid her 1979 taxes and did not owe what the IRS claimed, she did not file an objection to the IRS's claim. In addition, the IRS claimed that the Debtor owed an underlying tax of $1055, and $523 in interest, upon her 1980 return. The IRS had secured the 1980 tax liability by placing a lien on the Debtor's property located in Erie and Niagara counties, as well in the state of Hawaii. The Debtor believed that she owed $88,811 in income taxes for 1980 but had not paid that amount as of the filing of the Chapter 11 Petition in 1984.

It is important to note that the two years were interdependent. Partly at issue as to the tax straddles was the question of the year in which the losses could be recognized. The IRS's disallowance of 1979 deductions resulted in IRS's filing of a claim for 1980 that was much smaller than the liability that the Debtor had declared, but had not paid.

The Debtor began liquidating her interests in various parcels of real estate in 1985, with approval of the Court. She sold her Hawaiian condominium that year and turned over $46,317 in proceeds to the IRS.[1]

Beginning in April 1987, and pursuant to an Order of this Court, the Debtor sold her interest in three parcels of Erie County real estate (1218 Eggert Road, the Roycroft Inn, and 4925 Main St.) and received a total of $104,104 in proceeds which were placed in a separate account by the Debtor's attorney. As of December 31, 1992, those funds total approximately $130,328 and remain in an interest bearing account. The Order of the Court directed that the proceeds from the sale of 4925 Main St. be applied to any "tax liens" against that property, but gave no specific direction as to the proceeds of other properties.

The Debtor and many other taxpayers contested their federal income tax liabilities on the grounds that their deductions for tax straddle losses were proper. Unlike some others, however, the Debtor did not challenge the assessment formally in any Court.

The treatment of these tax straddle losses remained in flux throughout the 1980's. Indeed, the Debtor and the IRS remained in a standoff until 1991. In June of that year, the IRS accepted the Debtor's tax straddle loss deductions and filed an amended proof of claim. The IRS no longer claimed any tax for 1979, but agreed with the Debtor that she owed $88,811 on her 1980 income tax return. After treating the proceeds from the Hawaiian condominium sale as if made as timely payments upon the 1980 tax liability, (and applying as well a $22,682 tax abatement), the IRS put the Debtor's remaining liability at $19,689. This liability was later amended to $17,390 in underlying tax. But the IRS also claimed $42,826 in pre-petition interest, and claimed post-petition interest as well. As of March 1993, the total amount the IRS claims it is owed by the Debtor is approximately $108,000, and still growing.[2]

The Debtor seeks a determination that: (1) the IRS is not entitled to collect post-petition interest on the 1980 tax liability or alternatively (2) that post-petition interest should not be assessed until after the IRS

---

1. Apparently, the Debtor acquiesced in the IRS's insistence on payment of the unsecured 1979 tax liability as a condition of release of its lien on the 1980 tax liability. For some unknown reason, the Debtor did not obtain a discharge of the small 1980 tax lien. Moreover, she did not ask this Court or any other Court to restrain the IRS from applying those proceeds to taxes she believed she did not owe.

2. In addition, the IRS has claimed taxes owing from a 1976 joint return (filed with her ex-husband) as well as a 100% penalty owing from non-payment of withholding taxes in the Roycroft Inn case. Those taxes and penalties are not the subject of this motion.

agreed with her original position and amended its proof of claim in 1991.

## ANALYSIS

 It is well established that a natural person who is a Debtor in Chapter 11 is personally liable for post-petition interest upon non-dischargeable taxes. *Bruning v. United States*, 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964); *In re Jaylaw Drug*, 621 F.2d 524 (2d Cir.1980); *In re Cline*, 100 B.R. 660 (Bankr.W.D.N.Y.1989). "[Congress intended] that certain problems— e.g., those of financing government—override the value of giving the Debtor a wholly fresh start." *Bruning* at 361, 84 S.Ct. at 908. Here the 1980 income tax liability became due within 3 years of the Chapter 11 petition and is non-dischargeable. 11 U.S.C. § 507(a)(7), § 523(a)(1)(A). This Court is bound by the result in *Bruning* unless the facts of that case are distinguished from those at Bar.

The Debtor argues that *Bruning* should be distinguished on the theory that the *Bruning* rationale only applies where the Debtor had use of the monies owed to the government. She claims that the funds she owed were kept "in escrow" and therefore were unavailable to her. Assuming arguendo that *Bruning* is susceptible of such an interpretation, the funds here were not held "in escrow;" they were held by the Debtor's attorney and were always accessible to the Debtor except to the extent that her counsel advised that she leave them alone. An "escrow" contemplates the agreement of the adverse party. The IRS did not so agree. Moreover, the IRS was stayed from any collection efforts during this period by Section 362 of the Bankruptcy Code (11 U.S.C. § 362) and pos-

sessed no greater right to these funds than any other creditor. The Debtor and her Counsel simply thought it prudent to hold the funds aside until the tax liability was finally resolved. Accordingly, the *Bruning* case may not be distinguished on the theory that these funds were more accessible to the IRS than those at issue in *Bruning*.

The fact that the tax liability at issue here was subject to dispute also fails to distinguish *Bruning*. The Debtor here did not pursue any of the options available to her in order to resolve her tax liability. She could have sought judicial resolution at an earlier stage.[3] (The option of paying the asserted tax liability (over $500,000) and suing the IRS for a refund was presumably not within reach.) The Debtor cannot sit on the sidelines for seven years watching other taxpayers fight the battle of the commodity straddles while she enjoyed the protective umbrella of Chapter 11, and now complain of the running of post-petition interest, when an earlier determination of liability was the proper course of action.[4]

Further, the Debtor's arguments misinterpret the *Ron Pair* case.[5] She argues that during the 1980's, "post-petition interest was not accruing within the bankruptcy as far as anyone knew because the *Ron Pair* case had not yet been decided by the Supreme Court of the United States and the apparently settled interpretation of Bankruptcy Code § 506(b) was that postpetition interest *did not run* on a nondischargeable tax claim. [Emphasis added]" Debtor's Reply Brief at 13. The Court must ask: "Did not 'run' " against whom or what?

**3.** Two of the options the Debtor could have pursued were an earlier motion under § 505 or an appeal to Tax Court. As to Tax Court, the Debtor states "No relief was likely there." In other words, the Debtor argues that there was no forum that would agree with her position. This argument neither justifies her inaction nor tolls the running of interest. The statement that "there was no way out of the legal thicket" is simply not accurate. Debtor's Reply Brief at 12.

**4.** The Debtor's imagery is of her "impaled on a picket ... until ... the Internal Revenue Service finally got around to considering her case on its own and lifted her off the picket." Debtor's Reply Brief at 10. Her compelling recitation of the intricacies of litigation involving *other taxpayers* is unavailing.

**5.** *U.S. v. Ron Pair Enterprises*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), holding that a creditor is allowed post-petition interest on an oversecured claim.

The *Ron Pair* case deals with the extent to which a secured creditor may collect post-petition interest at the expense of *other creditors*, and that case is irrelevant to the question of the extent of a non-dischargeable claim against *a debtor*. In other words, the size of a creditor's claim against "the estate" (the *Ron Pair* and *Timbers of Inwood* [6] issues) is a distinct matter from the size of the IRS's non-dischargeable claim against "the Debtor" (the *Bruning* issue).[7]

In this Chapter 11 case, it would make little sense for the Debtor to propose a Plan that would fail to address all of the non-dischargeable claims (with interest) against "her," even though other creditors might challenge such a proposal on *Ron Pair* or *Timbers of Inwood* grounds. Such proposals and challenges are a matter for another day, if raised.[8]

The Debtor's arguments based on "estoppel" theory are rejected. To the extent that they are based on *Heckler, Secretary of Health and Human Services v. Community Health Services of Crawford County, Inc.* 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984) (and assuming for the sake of argument that estoppel can ever apply against the IRS), she fails to demonstrate how she relied upon the IRS's "misrepresentation" to her detriment. It appears clear that she ignored the IRS's "misrepresentation" that she owed over $500,000 for 1979; she cannot now claim that she relied to her detriment only on the IRS's corollary claim that she owed next-to-nothing for 1980.

But just as important, Congress has made provision for instances in which the IRS's position is not "substantially justified," and it did not provide for interest abatement.[9] If authority exists in cases like this for remedies beyond the award of costs, expenses and attorneys fees, the *Heckler* case is not such authority and no such authority is cited to the Court.[10]

The Debtor's remaining arguments have been examined and are rejected as lacking merit.

## CONCLUSION

The Debtor has lived under Chapter 11 for nine years. During this time she has been able to sell some of her holdings free from creditor harassment and intervention, and thereby obtain fair value rather than liquidation value. She was at all times free to pursue a favorable resolution of the tax-straddle dispute elsewhere, in the same manner that other taxpayers did, but chose not to for fear of an adverse result.[11] She enjoyed, as a Chapter 11 debtor, certain options not available to others: e.g., she could have sought an earlier determination under 11 U.S.C. § 505; she could have asked this Court to examine the IRS's insistence upon applying remittances to the disputed taxes; and she could have filed objections to the IRS proofs of claim.

She enjoyed all of those options, availed herself of none, and cannot now be heard

---

**6.** *United Savings Assoc. of Texas v. Timbers of Inwood Forest Ass., Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1984).

**7.** In *Bruning* the Court noted an identical distinction between that case and the case of *New York v. Saper,* 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710 (1949). In *Saper* the Court held that interest stops when bankruptcy is filed (as against the trustee) while in *Bruning* it held that interest on non-dischargeable debts continues to run (as against the Debtor).

**8.** The Debtor may well propose to pay all creditors at 100% due to her liability outside of bankruptcy and the small amounts owed to other creditors. If other creditors will be paid at least the principal amount of their claims in full, they might choose not to complain of the allowance of post-petition interest on the tax claims. Furthermore, if the Debtor proposes a rehabilitation plan (rather than a liquidating plan) and if she is able to negotiate terms for payment to the IRS she would be entitled to treatment of those payments to the IRS as a "budget item" outside the Plan.

**9.** 26 U.S.C. § 7430, which authorizes an award of costs and expenses, and perhaps attorney's fees, to prevailing taxpayers.

**10.** No attorneys' fees are awardable to her here, since in this effort to set aside the IRS's claim for post-petition interest, she is not the "prevailing party."

**11.** Neither law, nor equity, nor the Bankruptcy Code guarantee a favorable result.

to complain of the fact that this period was not "interest-free" as well.

If the tax-straddle dispute was so unique in American tax law as to cry out for a different result, then her arguments (which are indeed eloquent) might perhaps be better addressed to Congress.

The Debtor is liable for the post-petition interest on her 1980 tax federal tax liability under the authority of the *Bruning* case.