**In re ROYSTER COMPANY,
et al., Debtors.**

**Bankruptcy Nos. 91 B 11510 (BRL)
to 91 B 11512 (BRL).**

United States Bankruptcy Court,
S.D. New York.

Oct. 10, 1991.

Fulbright & Jaworski by David Rosenzweig, New York City, for debtors.

Patterson, Belknap, Webb & Tyler by David W. Dykhouse, New York City, for Gemini, Inc.

Winthrop, Stimson, Putnam & Roberts by Richard A. Horgan, Sheila A. Ozalis, Stamford, Conn., for Occidental Chemical Corp.

## DECISION AND ORDER ON MOTION FOR MODIFICATION OF A STIPULATION AND ORDER

BURTON R. LIFLAND, Chief Judge.

### I. INTRODUCTION

On April 16, 1991, during a hearing before this Court (the "April 16 Hearing"), Royster Company, Royster Midlantic Company and Rk Agri Services Inc. (collectively, "Royster"), a debtor under Chapter 11 of Title 11 of the United States Code (the "Code"), entered into a Stipulation and Order Providing for Escrow of Proceeds of Sale of Anhydrous Ammonia dated April 16, 1991 (the "Stipulation") with Commodities International Corp. ("CTI"), Gemini, Inc. ("Gemini"), NMB Postbank Groep N.V. ("NMB") and Occidental Chemical Corporation ("Occidental") with regard to the parties' conflicting claims to 20,000 "short" tons of anhydrous ammonia (*i.e.*, one short ton equals 2000 pounds per ton) (the "Ammonia"). In the Stipulation, the parties authorized Royster to purchase all or part of the Ammonia for a price of $123.12 per "metric" ton (*i.e.*, one metric ton equals 2200 pounds). Shortly after the Stipulation was signed by all the parties and so ordered by the Court, Gemini made a motion to have the Stipulation amended so that the price would read $123.12 per *short* ton instead of $123.12 per *metric* ton. It asserted that there had been a mistake, and that they had intended the price to be in short tons, not metric tons. The effect of this change would be a higher price per ton than specified in the Stipulation. Hearings on the motion to change the price were heard on April 30, 1991 and July 11, 1991 (the "April 30 Hearing" and the "July 11 Hearing", respectively).

The movant requests this Court, through the introduction of parol evidence or otherwise, to modify a stipulated settlement agreement recorded in open court by changing the price from $123.12 per *metric* ton to $123.12 per *short* ton.

## II. FACTUAL BACKGROUND

On April 8, 1991, Royster filed petitions for reorganization under Chapter 11 of Title 11 of the Code. Royster, a manufacturer of phosphate fertilizer, owned and operated a terminal in Tampa, Florida which it used for storing and handling anhydrous ammonia for area manufacturing facilities, including its own. Royster had an agreement with CTI, a fifty percent subsidiary of Royster, to store the Ammonia at the Tampa terminal.

On April 11, 1991, CTI filed a petition for Chapter 11 relief in the United States Bankruptcy Court in the District of Connecticut. That case is still pending before that court (the "CTI court").[1] At that time, the Ammonia was still in the Tampa terminal.

Upon the filing of the CTI petition, it was discovered that there were competing claims to the Ammonia. Gemini, an alleged secured party, claimed title to the entire 20,000 tons of the Ammonia. In addition, NMB alleged that it had a blanket lien on all of Royster's inventory and thus claimed a lien on all of CTI's assets, including the Ammonia. Finally, Occidental obtained a pre-judgment Writ of Replevin to replevy a described 13,670.38 *metric* tons of the Ammonia delivered by Occidental to CTI and stored in the Tampa Terminal. On April 16, 1991, Royster, unable to use its terminal facilities, made a motion seeking authorization to reject the storage agreement with CTI and cause the removal of the Ammonia from the terminal. Alternatively, Royster sought authorization and approval of the sale of the Ammonia to itself or third parties, all claims to be transferred to the proceeds of such sale and held in escrow.

Royster claimed no right to or interest in the Ammonia. However, it is undisputed that the presence of the Ammonia in the terminal prevented it from operating. The Tampa terminal had a maximum capacity of 35,000 short tons. At the time of the dispute, it was holding the 20,000 tons of the Ammonia under dispute, and could not profitably receive and process shipments as small as the 15,000 ton capacity that it had left. Thus, effectively, the terminal could not operate. Royster's Florida fertilizer plants were also affected because their production of diammonium phosphate fertilizer was dependent on the processing of ammonia at the terminal. It is undisputed that, as of the April 16 Hearing, Royster's Florida ammonia terminal and fertilizer plants had been shut down for those reasons, causing it to seek emergency relief. *See* Record at 5–8 (April 16, 1991).

In addition to the dispute over the Ammonia as a whole, there is also a dispute over one portion of the Ammonia, the 5,000 short tons known as the heel (the "Heel"). The Heel is that portion of the residue of the Ammonia that lies below the level of the pumping system in the terminal. Royster has alleged that the Heel is unusable and at a level inaccessible to the pumps. Moreover, Royster has claimed that physical removal of the Heel would cause operational problems and possible damage to the facility.

During the hearing on the motions brought before this Court on April 16, 1991, there was a recess that provided the parties with the opportunity to negotiate. When the proceedings resumed, counsel for Royster informed the Court that the parties had a stipulation which provided for the sale of the Ammonia and the placement of any proceeds in escrow subject to the claims, rights and interests of all parties. Any competing claims were to be resolved by the CTI court. Record at 19 (April 16, 1991). Gemini did not agree to that stipulation. The Court suggested a conference, as provided for by Rule 16 of the Rules of Bankruptcy Procedure, and the proceedings were again recessed.

It is undisputed that the Rule 16 Conference and related informal negotiations among the parties resulted in the Stipula-

---

1. In addition, a change of venue motion was granted by this Court to transfer the Royster bankruptcy proceedings to the Middle District of Florida. All proceedings in the Royster case are now pending before the Florida court, with the exception of this matter, which was pending before this Court at the time of transfer.

tion which, as its title reflects, "Provid[es] For Escrow of Proceeds of Sale of Anhydrous Ammonia." The Stipulation recites that approximately 20,000 short tons of anhydrous ammonia are presently being stored in the Tampa terminal. Stipulation at 1. Additionally, the Stipulation states the claims of each of the five parties. Stipulation at 2. The Stipulation does not address Royster's claim to the Heel.

However, the Stipulation provides that Royster may purchase *all or part* of the 20,000 short tons held in the terminal. Stipulation at 2. It also provides that "CTI is authorized to sell the ammonia to Royster at a price of $123.12 per metric ton *payable on a daily basis ...*" (emphasis added) Stipulation at 2.

Under the order Royster must place all sale proceeds in an interest bearing escrow account. All claims to the Ammonia attach to the proceeds in the escrow account. Stipulation at 3. Ultimately, the merits of all claims are to be decided by the CTI court. Stipulation at 3. Claims to any unsold Ammonia are to be allotted pro rata among the parties, including claims to the 5,000 short tons known as the Heel.

In addition, the Stipulation provides that, upon application to the Court, Gemini may seek release of the funds in the escrow account upon the posting of an appropriate bond. Stipulation at 4.

As noted above, the Stipulation was drafted during a recess in the Court proceedings. When the Court reconvened, the parties' agreement to the Stipulation was noted. Record at 20 (April 16, 1991). It has been noted in Court, at the subsequent April 30 Hearing, that during the negotiations Occidental confirmed the price, and that the market price for ammonia on April 16, 1991 ranged from a low of $115 per *metric* ton to a high of $125 per *metric* ton. Record at 39 (April 30, 1991). The scrivener of the Stipulation was the attorney for NMB. Record at 39 (April 30, 1991). There is absolutely no claim that the scrivener attorney mistakenly substituted the term "metric" for "short".

Shortly after the April 16 Hearing, Gemini claimed its counsel erred in agreeing to the Stipulation. Gemini now seeks to amend the price agreed upon to reflect a different unit of measurement. Gemini contends that the price per metric ton is a mistake, and seeks "correction" of the Stipulation to reflect a price per short ton. *See* Gemini's Motion to Correct the Stipulation and Order Dated April 16, 1991. Although Occidental's representative, using a Chambers' telephone, verified the price in metric tons during the negotiations, they have now submitted a response in favor of Gemini's motion to amend the Stipulation. It should be noted that such an amendment would increase their recovery on the proceeds of the sale of any of the Ammonia.

## III. DISCUSSION

### A. MODIFICATION OF THE STIPULATION:

Gemini prays for relief on the basis of two theories. First, it asserts that modification of the Stipulation is justified by the introduction of parol evidence because there has been a mistake in the drafting of the document at issue. Alternatively, it asserts that the Court must modify the Stipulation on the basis of fairness under Rule 60(b)(1) of the Federal Rules of Civil Procedure, as applied pursuant to Bankruptcy Rule 9024. Both theories fail.

#### 1. Introduction of Parol Evidence to Modify the Stipulation

A Stipulation and Order is a binding agreement between parties to a dispute which has been so ordered by the presiding court. When parties enter into a stipulation, the agreement is enforceable as a contract. *Neirbo Co. et al. v. Bethlehem Shipbuilding Corp., Ltd.,* 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167 (1939) (citing Cardozo, J. that, "a stipulation is a true contract," in *Bagdon v. Philadelphia & Reading C. & I. Co.,* 217 N.Y. 432, 436–37, 111 N.E. 1075 (1916)). *See also, In re Joint Eastern and Southern District Asbestos Litigation,* 129 B.R. 710 (E.D.N.Y.1991) (stipulations of settlement are favored by the courts in bankruptcy matters and, once approved by the bankruptcy court, have

the effect of a final judgment); *In re North Broadway Funding Corp.*, 34 B.R. 620, 622 (Bankr.E.D.N.Y.1983) (stipulations are rarely set aside absent such factors that would undo a contract); *accord In re Furniture-in-the-Raw*, 462 F.Supp. 958, 961 (S.D.N.Y.1979) (where the contract, expressed as a stipulation, was unambiguous and not held to be an exception to the parol evidence rule). Thus, the Stipulation which is the subject of this dispute is a contract, and any modification of it is subject to the general principles governing the construction, interpretation and law of contracts. *See generally United States v. ITT Continental Banking Company*, 420 U.S. 223, 238, 95 S.Ct. 926, 935, 43 L.Ed.2d 148 (1975); *United States v. Armour & Co.*, 402 U.S. 673, 681–82, 91 S.Ct. 1752, 1757–58, 29 L.Ed.2d 256 (1971); *In re Neuman*, 55 B.R. 702, 705 (S.D.N.Y.1985). These principles dictate that, when parties set forth the terms of an agreement in clear and unambiguous terms, in a writing intended as a final expression of their agreement, parol evidence may not be introduced to change the terms of such agreement.[2] In the instant case, Gemini seeks to modify the price of the Stipulation from "$123.12 per *metric* ton" to "$123.12 per *short* ton" through the introduction of parol evidence. The parol evidence rule states that, when a contract (in this case, the Stipulation),

> has *clear meaning* and is *unambiguous,* absent fraud, accident or *mistake,* parol evidence which tends to vary or contradict terms of the writing is not admissible. (emphasis added) *In re Bell*, 47 B.R. 284, 286 (Bankr.E.D.N.Y.1985) cit-

ing *U.S. v. Wallace Fuel Oil Co.*, 540 F.Supp. 419, 425 (S.D.N.Y.1982).

When a contract is clear and unambiguous,[3] the court "will not look beyond the 'four corners' of the document" to interpret what the parties meant. *See Tri–Star Pictures v. Leisure Time Productions, B.V.*, 749 F.Supp. 1243 (S.D.N.Y.1990). *Accord Bellefonte Re Ins. Co. v. Argonaut Insurance Co.*, 581 F.Supp. 241, 243 (S.D.N.Y.1984).

■ Here, Gemini attempts to introduce parol evidence as to the price by alleging ambiguity in the document and mistake by the parties in employing that term. Under the circumstances leading to the formation of the Stipulation, both allegations are incorrect.

The parties have provided in clear and unambiguous terms that the price be expressed in *metric* tons. Gemini contends that the use of "short ton" in part of the document, and the use of "metric ton" in other parts of the document, indicate ambiguity which allow for the introduction of parol evidence to indicate the intent of the parties. However, although both metric tons and short tons are referred to in the Stipulation, each term has its own clear and unambiguous meaning. The term "short ton" is used in the Stipulation to indicate volume for storage. Separately, the term "metric ton" is used to indicate value in terms of the sale price.[4] In fact, there is no ambiguity as to each term's meaning. Thus, there is no reason based on the theory of ambiguity to violate the parol evidence rule.

---

2. *See* Williston, 13 *A Treatise on the Law of Contracts* § 631 (3d ed.1961) (definition of the parol evidence rule). The parol evidence rule, based on common law and statutes in most states, prevents reformation of a contract by oral testimony. *See Cruzan v. Director, Missouri Dept. of Health,* —— U.S. ——, 110 S.Ct. 2841, 2854, 111 L.Ed.2d 224 (1990).

3. A term of a contract is ambiguous if a "reasonably intelligent person" would view the term as capable of more than one meaning. *Eskimo Pie Corp. v. Whitelawn Dairies*, 284 F.Supp. 987, 994 (S.D.N.Y.1968).

4. Under Section 2–202 of the Uniform Commercial Code (the "UCC"), which has been adopted in most states, the parol evidence rule is made applicable to the sale of goods. Under the UCC, in a contract for the sale of goods, if a term of usage of trade or course of dealing is unclear, that term may be explained through parol evidence. *See Crescent Oil and Shipping Services, Ltd.*, 929 F.2d 49, 52 (2d Cir.1991) (where the meaning of a pricing term, "discharge port", for a contract for the sale of oil was unclear to all paries and thus justified the introduction of parol evidence). This is inapplicable here, however, as there is no dispute as to the meaning of the term "metric ton".

■ Gemini contends also that there has been a mistake, and thus parol evidence should be introduced to correct it. Those instances where mistake is a sufficient reason to introduce parol evidence to modify a contract entail either a scrivener's error or a mutual mistake. Because reformation or modification of a contract is allowable in order to make the written contract accurately express the agreed-upon terms of the contract, oral or parol testimony is permitted only when both parties have misunderstood the agreement which they have executed, *i.e.*, in the case of a mutual mistake. Williston, 4 *A Treatise on the Law of Contracts* § 1552 (3d ed. 1970). A mutual mistake in a contract exists when the parties have agreed to certain terms but the contract as signed and executed by both parties does not reflect their common understanding. *See Investors Insurance Co. of America v. Dorinco Reinsurance Co.,* 917 F.2d 100 (2d Cir.1990) (where party was precluded from offering parol evidence for failing to meet its heightened burden of establishing mutual mistake). Here, the mistake was unilateral, and the misunderstanding solely Gemini's. Under these circumstances, when only one party to the contract wishes to alter the terms of the agreement, parol evidence may not be introduced. *See, e.g., Fox v. Wiener Laces, Inc.,* 105 Misc.2d 672, 432 N.Y.S.2d 811 (N.Y.Sup.Ct.1980) (unilateral mistake by attorney of one party to a stipulation in dictating the terms of a settlement agreement will not justify invalidating the stipulation).

Thus, because the terms are unambiguous, and there is no mistake which would allow for the introduction of parol evidence, Gemini's request must be denied.

5. Although Gemini does not raise these issues, there are some instances where the Court may modify a Stipulation and Order based on general equitable principles of fairness. One such instance is where new and unforeseen circumstances have made the decree oppressive. *United States v. City of Fort Smith,* 760 F.2d 231, 233 (8th Cir.1985). However, that is not the case at hand. Gemini merely contends that they are entitled to relief because their lawyer was mistaken as to the price he should have agreed to.

## B. REQUEST FOR RELIEF UNDER RULE 60(b)(1):

■ Alternatively Gemini attempts to seek relief under Rule 60(b)(1) of the Federal Rules of Civil Procedure, as applied pursuant to Bankruptcy Rule 9024, which provides that "[o]n motion and upon such terms as are just," the court may relieve a party or its legal representative from a final judgment or order on the grounds of, *inter alia,* mistake. Courts have held that a party seeking Rule 60(b)(1) relief from a stipulation agreement must meet a very heavy burden of proof. *Nemaizer v. Baker,* 793 F.2d 58, 63 (2d Cir.1986). Generally this burden is only met upon the clear showing of a grievous wrong that has resulted from unforeseen conditions. *See generally United States v. Swift & Co.,* 286 U.S. 106, 119, 52 S.Ct. 460, 464, 76 L.Ed. 999 (1932). Additionally, courts have held that neither ignorance nor carelessness on the part of an attorney will provide grounds for Rule 60(b)(1) relief. *Hoffman v. Celebrezze,* 405 F.2d 833 (8th Cir.1969). In the instant case, there is no showing of a grievous wrong and there are no unforeseen conditions. In addition, Gemini's allegation of mistake is based entirely on the claim that its attorney had a faulty memory. Gemini's Memorandum of Law at 17. Thus, modification of the Stipulation and Order under Rule 60(b)(1) is inappropriate.[5]

## IV. CONCLUSION:

Gemini's motion for an evidentiary hearing to "correct" the Stipulation must be denied. The terms of the Stipulation are clear and unambiguous. Gemini fails to show any justification to introduce parol evidence to modify the Stipulation to reflect a higher price expressed in short tons

A second instance where the Court may reform a stipulation is where there has been clear injustice. *See Ginsberg v. Burlington Industries, Inc.,* 500 F.Supp. 696, 699 (S.D.N.Y.1980). However, there is no evidence of clear injustice here. The price calculated per metric ton does not result in a great windfall to Royster and hardship to Gemini. In fact, it is within the fair market price range for the day on which the Stipulation was signed.

instead of the original price expressed in metric tons. To allow Gemini to so modify the Stipulation opens the door to agreement modification at the whim of parties with second thoughts after signing. Thus, the Stipulation should stand as is, and any competing interests should be determined by the CTI court.

Accordingly, it is hereby found and determined that, for all the reasons set forth herein, Gemini's motion for entry of an order correcting Stipulation and order dated April 16, 1991 is denied.

SO ORDERED.