In re Andrew M. WILLAUER and Lynda A. Willauer, Debtors.

Andrew M. WILLAUER and Lynda A. Willauer, Plaintiffs,

v.

UNITED STATES of America INTERNAL REVENUE SERVICE, Defendants.

Bankruptcy No. 82–00079–JNF. Adversary No. 95–1004.

United States Bankruptcy Court, E.D. Massachusetts.

Feb. 27, 1996.

James D. McGinley, Edwards and Angell, Boston, MA, for Plaintiffs/Debtors.

Gary S. Gross, Internal Revenue Service, Dist. Counsel, Boston, MA, Richard J. Gagnon, Tax Div., U.S. Dept. of Justice, Washington, DC, for Defendants.

## MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

### I. INTRODUCTION

The matter before the Court is an adversary proceeding filed by Andrew M. and

Lynda A. Willauer (the "Debtors") against the United States of America. Through their complaint, the Debtors seek payment of $12,737.40, plus interest from and after July 15, 1991 from the Internal Revenue Service (the "IRS"). Resolution of the dispute requires an examination of a Stipulation that was filed on March 7, 1985 and executed by counsel to the Debtors and counsel to the IRS in the Debtors' Chapter 11 case.

The Court conducted an evidentiary hearing on October 24, 1995, at which time the Debtor, Andrew Willauer, counsel to the Debtors, James D. McGinley, and counsel to the IRS, Gary S. Gross, the two attorneys who had signed the Stipulation, testified. Five exhibits were admitted into evidence. Prior to the hearing, counsel to the parties filed a Joint Pre–Trial Memorandum setting forth admitted facts. Upon consideration of the admitted facts, the testimony, and the exhibits, and in accordance with Fed. R.Bankr.P. 7052, the Court makes the following findings of fact and rulings of law.

## II. FACTS

The Debtors filed a voluntary petition under Chapter 11 on May 5, 1982. On August 23, 1984, the Court entered an order confirming the Debtors' Second Amended Plan of Reorganization (the "Plan"). Prior to the confirmation hearing, the IRS had sent the Debtors two Requests for Payment.[1] The Debtors submitted, as exhibits 4 and 5, these Requests for Payment, which were dated April 11, 1983 for the 1980 tax year and April 18, 1983 for the 1981 tax year. The interest and penalties set forth in these assessments totalled $8,983.44.

The Debtors, in their Plan, placed "all claims of the Internal Revenue Service whether or not they are secured by a lien filed against the assets of the Debtor [sic]" in Class One. See Second Amended Plan of Reorganization, Article II, ¶ 2.1. They proposed to treat the Class One claims as follows: "The Internal Revenue Service is to be paid in full over a period of three (3) years with interest at the rate provided in Internal

Revenue Code § 6621, to be paid in three equal installments of ⅓ of the indebtedness outstanding at Confirmation." Id. ¶ 6.1. The Debtors also provided in the Plan for the payment of unsecured claims "in full plus interest at 10% simple, in the following manner: $10,000 (approximately 18%) on the Effective Date; ⅓ of the remainder on the Payment Date; an equal amount one (1) year from the Payment Date; an equal amount two (2) years from the Payment Date." Id. ¶ 6.8. Additionally, Article V of the Plan, captioned Assets and Liabilities, stated that the value of the Debtors' assets totalled $851,507.00, while their liabilities totalled $466,606.40. Finally, Article XI of the Plan contained broad and extensive provisions relative to the retention by this Court of jurisdiction over disputes involving the Plan and claims against the Debtors or against their estate.

At the time the Court confirmed the Plan on August 23, 1984, the Court entered a bar date of September 28, 1984 for filing objections to claims. On October 19, 1984, the Debtors objected to the proof of claim of the IRS, which proof of claim included 1) an administrative expense claim of $218.03 for withholding and FICA taxes for the third and fourth quarters of 1982; 2) an unsecured priority claim in the amount of $32,080.01 for various taxes due in 1979 through 1981, plus $6,000.00 for estimated income taxes due in 1982; and 3) penalties in the amount of $8,527.55 for unpaid unsecured priority claims and penalties of $277.10 for unpaid unsecured general claims, for a total claim for penalties of $8,804.65.

On January 29, 1985, the Court scheduled a trial on the Debtors' objection to the claim of the IRS. However, on March 7, 1985, the Debtors and the IRS filed a Stipulation that provided that the IRS would be allowed an administrative expense claim in the amount of $218.03, an unsecured priority claim in the amount of $32,080.01, and a general unsecured claim in the amount of $8,893.39.

---

1. These Requests for Payment were sent to the Debtors. They were not filed with the bankruptcy court and were not treated as proofs of claim.

The Court entered a Final Decree in the case on November 26, 1985. The case was then closed.

Pursuant to their Plan, the Debtors paid the allowed priority claims of the IRS for the 1980 and 1981 periods (i.e., $4,935.00 for 1980 income taxes plus $726.33 in interest to the petition date, and $10,209.00 for 1981 income taxes plus $111.88 in interest to the petition date), and they paid the allowed amount of the general unsecured claims. *See* Joint Pre–Trial Memorandum, Facts Which Are Admitted and Which Require No Proof, ¶ 5 and ¶ 6.

On July 10, 1991, the Debtors filed an Emergency Motion to Reopen their Chapter 11 case and an Application for an Order Enforcing Stipulation with the Internal Revenue Service. The Court promptly reopened the Chapter 11 case. On July 18, 1991, the IRS sent the Debtors a letter which stated the following:

> The amount which you owe and remains due for your 1980 Federal income tax liability is $4,615.93. This amount consists of $2,209.75, representing interest from the petition date, 5/5/82, to the date of confirmation, 8/24/84, plus $4,406.10, representing interest in the sum of $2,209.75 from the date of confirmation to the present date.
>
> The amount which you owe and remains due for your 1981 Federal income tax liability is $8,414.94. This amount consists of $4,028.50, representing interest from the petition date to the date of confirmation, plus $4,386.44, representing interest on the sum of $4,028.50 from the date of confirmation to the present date.
>
> Upon full payment of the sum of $12,-760.79, by certified cashier's or treasurer's check, this office will release the federal liens for the 1980 and 1981 income tax liabilities. . . .

Defendant's Exhibit 1. On July 22, 1991, the Debtors paid the IRS $18,052.14 in order to obtain a release of the federal tax liens, arising out of unpaid, post-petition, pre-confirmation interest and penalties on their income tax liabilities for the years 1980 and 1981. Joint Pre–Trial Memorandum, Facts Which Are Admitted and Which Require No Proof, ¶ 7. After negotiations with the IRS, the IRS refunded the Debtors $5,414.74, leaving a balance of $12,737.40. *Id.* at ¶ 8 and ¶ 9.

There was no activity in the reopened case until the United States Trustee filed a Motion to Dismiss on May 6, 1994. On August 23, 1994, this Court conducted a hearing on the Debtors' Application for an Order Enforcing Stipulation and granted the Application because the IRS failed to file a response or an objection to the Application, despite being notified of the hearing at its Special Procedures Division.

On September 1, 1994, the Debtors filed a Motion to Compel Compliance with the Court's Ruling of August 23, 1994, to which motion the IRS objected. On December 15, 1994, the Court entered an order requiring the Debtors to file an adversary proceeding.

At the evidentiary hearing conducted on October 23, 1995, the July 18, 1991 letter from the IRS to the Debtors, as well as the Stipulation, were introduced into evidence. The Stipulation provides the following:

> Now come Lynda A. and Andrew M. Willauer (the "Debtors") and the United States Internal Revenue Service (the "IRS") and stipulates to the allowance of the IRS claims as follows:
>
> 1. The administrative expense claims of the IRS be allowed in the amount of $218.03;
>
> 2. The Unsecured priority claims of the IRS be allowed in the amount of $32,080.01 in accordance with the following schedule (as to the unsecured priority claims of the IRS for FUTA taxes plus statutory additions, allowance hereof shall be without prejudice to the Debtors' right to have amounts hereafter paid to the Commonwealth of Massachusetts as employment security taxes (M.G.L. c. 151A) credited to U.S. FUTA taxes in accordance with the provisions of federal statute):

| KIND OF TAX | TAX PERIOD | TAX DUE | INTEREST TO PETITION |
|---|---|---|---|
| WITH & FICA | 1980 (4Q) | $ 753.35 | $ 129.20 |
| WITH & FICA | 1981 (3Q) | $ 6,553.37 | $ 752.74 |
| WITH & FICA | 1981 (4Q) | $ 957.89 | $ 49.34 |
| FUTA | 1979 | $ 2,076.04 | $ 605.86 |
| FUTA | 1980 | $ 1,739.75 | $ 299.71 |
| FUTA | 1981 | $ 386.00 | $ 19.88 |
| INCOME | 1979 | $ 1,400.49 | $ 374.18 |
| INCOME | 1980 | $ 4,935.00 | $ 726.33 |
| INCOME | 1981 | $10,209.00 | $ 111.88 |
| | | $29,010.89 | $ 3,069.12 |
| | | TOTAL DUE | $32,080.01 |

3. The unsecured general claim of the IRS be allowed in the amount of $8,893.39.

With respect to the Stipulation, counsel to the Debtors, James D. McGinley, testified 1) that it was his practice to resolve all claims that the IRS possessed when he drafted and executed the Stipulation; 2) that he was aware of the problem of post-petition interest, and the ability of the government immediately after a Chapter 11 filing to levy and seize assets; and 3) that ¶ 3 of the Stipulation, the only paragraph that cannot be reconciled with the proofs of claim submitted by the IRS, was "a hodge-podge." In his words,

[i]t was to cover everything else. It was to cover the fact that under [11 U.S.C. §] 726(c), if my memory is correct, that, for instance, this is more than the interest would have been. They had claims for penalties. Well, those penalties would not have been general unsecured claims. They should have been in another category. But we wanted to get that wrapped up, too. We wanted to get everything dealt with that was up until confirmation. It doesn't say all that, but it's sure something, that $8,893.39, and that was a product of some back and forth negotiations, I am certain, between Mr. Gross and me.[2]

Counsel to the IRS, Gary S. Gross, testified 1) that the Stipulation was "just a short little stipulation to get it done;" 2) that he was unable to recall how he and Mr. McGinley arrived at the number appearing in ¶ 3; and 3) that he did not recall "any discussions whatsoever about post-petition interest" be-

cause "that was not an issue that was before the Court with respect to the objection."

## III. POSITIONS OF THE PARTIES

### A. *The Debtors*

The Debtors note that the Bankruptcy Code does not expressly set forth the treatment of post-petition interest that accrues on pre-petition, nondischargeable tax liabilities in Chapter 11 cases involving individuals. *See generally,* 11 U.S.C. §§ 502(b)(2), 507(a)(8), 523(a)(1), 726(a)(5), 1129(a)(7), 1129(a)(9)(C), and 1141(d)(2). The Debtors, without discussing *Bruning v. U.S.,* 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964), cite *In re Boston and Maine Corp.,* 719 F.2d 493 (1st Cir.1983), *cert. denied, City of Cambridge v. Meserve,* 466 U.S. 938, 104 S.Ct. 1913, 80 L.Ed.2d 461 (1984), in support of their argument that because the state of the law in the First Circuit was uncertain at the time the Stipulation was executed the IRS "was probably precluded from continuing to accrue interest against the Willauers, although this is uncertain." The Debtors add that because the IRS sent them Requests for Payments in April of 1983 in violation of the automatic stay, the IRS "should not be allowed in good conscience to contend that the 'Stipulation Disposing of Claims of the Internal Revenue Service' did not govern all pre-confirmation obligations of the Willauers for taxes, penalties and interest for years 1980 and 1981."

### B. *The IRS*

The IRS argues that its entitlement to collect post-petition accruals of interest on

---

**2.** The Court notes that counsel may have intended to refer to 11 U.S.C. § 726(a)(1)–(6).

the Debtors' nondischargeable tax obligations was settled at the time the Debtors entered into the Stipulation. *See Bruning v. U.S.*, 376 U.S. at 362, 84 S.Ct. at 908–09. *See also Hugh H. Eby Co. v. U.S.*, 456 F.2d 923 (3d Cir.1972); *In re Johnson Elec. Corp.*, 442 F.2d 281 (2d Cir.1971). The IRS also argues that neither the Plan nor the Stipulation dealt with post-petition, pre-confirmation interest and that none of the circumstances surrounding the preparation of these documents suggest that the Debtors intended to fix post-petition, pre-confirmation liabilities. Indeed, the IRS argues that the testimony establishes that there was no meeting of the minds and that counsel to the Debtors' expectation as to what was settled cannot create an additional contract term. Finally, the IRS notes that under *Matter of Becker's Motor Transp., Inc.*, 632 F.2d 242, 249 (3d Cir.1980), the IRS cannot be estopped from asserting nondischargeable claims against individuals. *See also In re Gurwitch*, 794 F.2d 584 (11th Cir.1986); *In re Marietta Baptist Tabernacle*, 13 B.R. 715 (Bankr.N.D.Ga. 1981).

## IV. DISCUSSION

■ A stipulation is enforceable as a contract, *Neirbo Co. v. Bethlehem Shipbuilding Corp., Ltd.*, 308 U.S. 165, 175, 60 S.Ct. 153, 158, 84 L.Ed. 167 (1939) (citation omitted), and the construction, interpretation or modification of a stipulation is subject to the law of contracts, *U.S. v. ITT Continental Baking Co.*, 420 U.S. 223, 238, 95 S.Ct. 926, 935, 43 L.Ed.2d 148 (1975). Accordingly, if a writing is a final expression of the agreement of the parties to it, parol evidence may not be introduced to change its terms. *In re Royster Co.*, 132 B.R. 684, 687 (Bankr.S.D.N.Y. 1991) (citing Williston, 13A *Treatise on the Law of Contracts* § 631 (3rd ed. 1961)).

■ Although the Stipulation must be construed against the Debtors, as their counsel drafted it, the Stipulation is ambiguous with respect to whether the parties intended to include all claims that the IRS had or might assert against the Debtors individually, in addition to claims the IRS had against the estate. Viewed in this way, parol evidence could shed light on what the parties intended by ¶ 3.

■ The testimony was conflicting. Debtors' counsel indicated that he intended to resolve all issues with the IRS. However, the Stipulation did not contain language such as that present in a stipulation reviewed by the court in *In re Adelstein*, 167 B.R. 589 (Bankr.D.Ariz.1994). In that Chapter 7 case, the court determined that a stipulation and an order containing the language that " 'this agreement is in full and final settlement of the Proof of Claim filed by the Internal Revenue Service' " settled the IRS's claim for accrued and accruing post-petition penalties and interest because the claim was paid and the debt eliminated. *Id.* at 590. The court rejected the IRS's argument that the settlement did not include post-petition penalties and interest because "[s]uch a position ... would negate the purpose for settlements. Parties would not settle cases if the matters at issue were not intended to fully and completely settle the merits of the controversy." *Id.*[3] The court also rejected the IRS's reliance upon *Bruning*, stating the following:

This Court agrees with the Supreme Court, that in cases of debts which are not settled, post-petition interest and penalties on non-dischargeable taxes may be collectible from the Debtor, despite the discharge of other legal obligations. But this is not the issue in this case. The issue here is whether the settlement of March 3, 1992 settled fully the claim of the United States, which in its purest sense, would have included any accrued and accruing interest on the settled claim.

*Id.* at 591.

Although the Stipulation does not contain the type of language present in the stipulation considered by the court in *Adelstein*, the extrinsic evidence suggests that the parties intended to settle all obligations to the IRS.

---

**3.** The court added the following observations about settlements: "[a] settlement is merely a compromise. In its usual form, a settlement does not include complete capitulation or surrender by either party. A settlement typically resolves disputes in such fashion so that neither party is wholly satisfied." 167 B.R. at 590 (citation omitted).

While the Court does not reject the testimony of Gary Gross, the Court finds that the testimony of Debtors' counsel was more compelling, particularly with reference to the proof of claim to which the Debtors objected, the existing case law that would require the Debtors to pay post-petition interest on the pre-petition, priority tax claims, and counsel's customary practice.

The amount of the general unsecured claim allowed the IRS in ¶ 3 of the Stipulation compels the conclusion that the parties compromised all indebtedness remaining after the Debtors acquiesced to the IRS's position with respect to administrative and priority claims. The $8,893.39 amount set forth in ¶ 3 is close to, but *more than*, the amount of penalties sought by the IRS in its proof of claim, i.e. $8,804.65, thereby permitting the inference that the parties considered post-petition, pre-confirmation interest on the nondischargeable pre-petition priority claim in addition to the penalties sought by the IRS. Indeed, the amount set forth in the Stipulation is just 65 cents less than half the total of the penalties sought by the IRS in the proof of claim and the interest and penalties set forth in the two Requests for Payment sent to the Debtors in April of 1983 (i.e., $8,804.65 + $8,983.44 = $17,788.09/2 = $8,894.04 vs. $8,893.39). If the Debtors intended to acquiesce to the IRS's claim for penalties in its proof of claim, there would be no reason to depart from the figure set forth in the proof of claim. Accordingly, the Court finds that the parties were compromising

obligations to the IRS in addition to those set forth in the proof of claim.

■ Additionally, counsel to the Debtors testified that he was aware of the potential for the IRS to claim post-petition interest from his experience in a previous case. This awareness could only be reinforced by the very cases cited by the IRS, namely *Bruning* and its progeny.[4] Moreover, the decision in *In re Boston and Maine Corp.*, compels the payment of such interest. In that case, the Court of Appeals for the First Circuit noted the following:

> Despite the general prohibition on the payment of postpetition interest [from the estate], three exceptions have been developed by the federal courts. Interest may accrue: (1) where the bankrupt ultimately proves to be solvent; (2) where the securities, held by the creditor produce income after the filing of the petition; and (3) where the amount of the secured creditor's security is sufficient to satisfy both the principal and interest due on the secured claim.

719 F.2d at 496 (citations omitted). Because the Debtors' Plan in Article V contained unequivocal evidence of the Debtors' solvency, counsel would have realized that the claims of the IRS would not have been limited to the administrative claim and pre-petition priority claims set forth in the proof of claim and would have included the claim for post-petition interest on the nondischargeable tax claims of the IRS. Accordingly, the very

---

4. The Court notes that in *In re Heisson*, 192 B.R. 294 (Bankr.D.Mass.1996), the court, citing *City of New York v. Saper*, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710 (1949) and *Sexton v. Dreyfus*, 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244 (1911), ruled that post-petition, pre-confirmation interest on nondischargeable tax debt was disallowed "under the general rule of section 502(a)(2) [sic] disallowing postfiling interest on unsecured claims." 192 B.R. at 296. Citing Chapter 13 cases involving nondischargeable student loans, the court stated that "[t]o treat section 1141(d)(2) as trumping section 1129(a)(9)(C) would make the latter section meaningless. Section 1141(d)(2) must, therefore, be construed to refer only to the unpaid portion of a claim under a plan paying less than a 100% dividend." *Id.*

The court in *Heisson* did not discuss *In re Fox*, 130 B.R. 571 (Bankr.W.D.Wash.1991), in which

the court considered the identical issue. In *Fox*, the court noted that the decisions construing the Chapter 13 discharge, which is broader than the Chapter 11 discharge, are inapplicable to Chapter 11 cases. It found that the discharge entered upon the entry of an order confirming an individual debtor's plan of reorganization does not cover interest and penalties on pre-petition priority tax claims that accrue post-petition. *See also In re Turgeon*, 158 B.R. 328 (Bankr.W.D.N.Y.1993); *In re Cline*, 100 B.R. 660 (Bankr.W.D.N.Y.1989). *Cf. In re Adcom, Inc.*, 74 B.R. 673 (Bankr. D.Mass.1987), *aff'd in part, rev'd in part*, 89 B.R. 2 (D.Mass.1988). This Court finds that the decision in *Fox* is more persuasive than the decision in *Heisson*. Nevertheless, the Court notes that the decision is *Heisson* is distinguishable from the situation in the instant case because the debtors in *Heisson* were insolvent at the time of confirmation.

nature of the agreement—captioned Stipulation—compels the conclusion that the Debtors and the IRS compromised *all* of the Debtors' obligations to the IRS for pre-petition penalties and post-petition interest and penalties.

## V. CONCLUSION

Upon consideration of the weight of the evidence and the inferences that reasonably can be drawn from that evidence, the Court finds that the Stipulation approved by this Court in March of 1985 was intended to resolve all claims of the IRS, including pre- and post-petition claims, as well as claims that, absent the Stipulation, would not be dischargeable under 11 U.S.C. § 1141 and could be asserted against the Debtors individually. Accordingly, the Court enters judgment in favor of the Debtors in the amount of $12,737.40 plus interest from July 15, 1991 at the federal judgment rate and against the IRS.