**In re HILLSBOROUGH HOLDINGS CORPORATION, et al., Debtors.**

**James W. WALTER, et al., Plaintiffs,**

**v.**

**The CELOTEX CORPORATION and Jim Walter Corporation, Defendants.**

Bankruptcy Nos. 89–9715–8P1 to 89–9746–8P1 and 90–11997–8P1.
Adv. No. 96–340.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

May 28, 1996.

James L. Patton, Jr., Young, Conway, Stargatt & Taylor, Wilmington, DE.

Richard A. Nielsen, Tampa, FL.

Marsha Griffin Rydberg, Tampa, FL.

Don M. Stichter, Tampa, FL.

Charles E. Koob, Simpson, Thacher & Bartlett, New York City.

Robert D. Drain, Paul, Weiss, Rifkind, Wharton & Garrison, New York City.

Steven M. Pesner, Akin, Gump, Rifkind, Wharton & Garrison, New York City.

Fred Baron, Dallas, TX.

Joseph Rice, Barnwell, SC.

Gene Locks, Philadelphia, PA.

Jeffrey Warren, Tampa, FL.

W. Keith Fendrick, Tampa, FL.

Michael B. Colgan, Tampa, FL.

Howard D. Scher, Philadelphia, PA.

**ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT FILED BY JAMES WALTER, ET AL., AND DENYING MOTION FOR SUMMARY JUDGMENT FILED BY THE CELOTEX CORPORATION AND JIM WALTER CORPORATION**

ALEXANDER L. PASKAY, Chief Judge.

THESE ARE confirmed Chapter 11 cases of Hillsborough Holdings/Walter Industries and its 32 wholly owned subsidiaries, and the matters under consideration are two Motions For Summary Judgment. This adversary proceeding was commenced by a Complaint filed by James W. Walter and others against The Celotex Corporation (Celotex) and Jim

Walter Corporation (JWC). The first Motion for Summary Judgment is filed by Jim Walter, et al. The Plaintiffs, collectively referred to as the "Released Parties" seek summary judgment in their favor on both Counts of the Complaint; namely (1) Declaratory Relief and (2) Specific Performance. The other Motion for Summary Judgment is filed by the Defendants Celotex and JWC. In order to place the Motions under consideration in proper perspective, a brief recap of the events leading up to the Order of Confirmation of the Second Amended and Restated Joint Plan of Reorganization entered on March 25, 1995, in the Chapter 11 cases of HHC/Walter Industries, and its wholly-owned subsidiaries, is necessary.

Shortly after the commencement of the Chapter 11 cases, the Debtors commenced an adversary proceeding, Adv. No. 90–003, and in their Complaint named, as defendants, Celotex, JWC and more than 1000 individuals who were asbestos-related personal injury claimants. The Debtors sought a determination by this Court that the Defendants were not entitled to pierce the corporate veil separating Hillsborough Holdings from JWC which would, in turn, establish the basis for attacking the leveraged buy-out (LBO) which created the surviving corporation, Hillsborough Holdings (HHC)/Walter Industries, and which severed the relationship with Celotex, a former subsidiary of JWC. The thrust of this adversary proceeding was to assure that the asbestos-related personal injury claimants of Celotex would not have a valid enforceable claim against the reorganized Debtors.

Although the Debtors were successful in their adversary proceeding before this Court, and thereafter on appeal to the District Court, it was uniformly recognized that unless the Debtors could establish with finality that they are protected against the claims of the asbestos-related personal injury claimants, either through litigation or through a global settlement approved and consented to by all affected parties, the Debtors could not successfully reorganize. Shortly after the commencement of the evidentiary hearing scheduled to resolve certain controlling pre-confirmation issues, the parties, at the urging of this Court, attempted to formulate an all encompassing global settlement designed to immunize not only the Debtors but also numerous individuals, several of whom had already been sued by the asbestos-related personal injury claimants in non-bankruptcy forums prior to the commencement of these Chapter 11 cases.

After protracted and extensive negotiations between, among others, the Debtors, the Official Committee of Bondholders, the Unsecured Creditors, Apollo Investors, Ltd., Lehman Brothers, Inc., the co-proponent of the Joint Plan of Reorganization, the representative of the asbestos-related personal injury claimants, and also Celotex and JWC, the Second Amended and Restated Veil Piercing Settlement Agreement (VPSA) was created. Both Celotex and JWC signed the VPSA on November 22, 1994.

On December 20, 1994, Celotex filed a Motion in its own Chapter 11 case pending before the Honorable Thomas E. Baynes, Jr., seeking entry of an Order (a) authorizing and approving the VPSA; (b) authorizing Celotex to enter into the VPSA and render performance in accordance with the terms and conditions of the VPSA; and (c) approving certain acts and procedures to be undertaken by Celotex pursuant to the VPSA. Celotex, in its Motion, stated that "[i]t is assumed that the Released Parties, including the Hillsborough Debtors, ultimately will receive the protection provided by Section 524(g) of the Bankruptcy Code or similar protection acceptable to the Released Parties from all Veil Piercing Claimants." On the same date, Celotex filed a Certificate of Necessity in which it stated that "[t]he Second Amended and Restated Veil Piercing Settlement Agreement ... is an integral part of a proposed consensual plan of reorganization in the bankruptcy cases styled *In re Hillsborough Holdings Corporation, et al.*, Case Nos. 89–9715–8P1...."

On February 7, 1995, Judge Baynes heard the motion filed by Celotex and JWC to approve the VPSA, at which time counsel for Celotex stated, "[i]t is a feature and function of the amended agreement that the new bankruptcy legislation under § 524(g) be utilized as part of this process and program for

finality of the dispute.... Additionally we agree that we would incorporate or use our best efforts to incorporate into a reorganization plan in Celotex those agreements that are a part of the veil piercing settlement."

On January 10, 1995, the Creditor Proponents, the Debtors and the KKR Entities filed their Joint Motion for an Order Approving the VPSA. On March 2, 1995, this Court entered an Order and confirmed the Joint Plan of Reorganization as Modified, and specifically approved the VPSA. In that Order, the Court stated, "the Second Amended and Restated Veil Piercing Settlement Agreement is inextricably intertwined with the Consensual Plan of which it is an integral and essential component.... The Veil Piercing Settlement is in the best interests of the Debtors' estates and is fair and equitable to all parties in interest."

The present controversy centers not around the relevant facts, which are not in dispute, but rather on the interpretation of § 524(g) as it relates to Section 4(e) of the VPSA. Because the precise language is crucial to the resolution of the Motions under consideration, it is necessary to quote the same verbatim. Section 4(e) of the VPSA reads as follows:

> The Celotex Corporation, JWC, the Official Celotex Committees and the Veil Piercing Claimants' Representatives each agrees to propose and use its respective best efforts to obtain confirmation of a Chapter 11 plan in the Celotex Chapter 11 Case that includes a provision for an injunction pursuant to Section 524(g) of the Code and shall apply to, cover, protect and benefit, *inter alia*, each and all of the released Parties in his/her/its respective capacity as a Released Party or an injunction acceptable to the Released Parties that provides for the same protection afforded by Section 524(g) to the Released Parties.

It is without dispute that the Debtors lived up to their end of the bargain called for by the VPSA, and did furnish $375 million in value to be used in funding the Trust Fund established to satisfy the claims of the asbestos-related personal injury claimants filed and allowed in the Celotex case.

The original Plan of Reorganization filed by Celotex and Carey Canada, Inc., its wholly-owned subsidiary, on January 27, 1995, stated in relevant part as follows:

> *Veil Piercing Settlement Injunction.* In order to preserve and promote the settlements contemplated by and provided for in this Plan, the Veil Piercing Settlement Agreement and the Amended Joint Plan of Reorganization Dated as of December 9, 1994 ... and pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under Sections 105, 524 and 1141 of the Bankruptcy Code (including but not limited to, Section 524(g)), effective of the Effective Date, all claims of the type settled by the Veil Piercing Agreement shall attach solely to the Trust and all Persons and Governmental Units shall be enjoined and restrained, to the fullest extent permitted by law from commencing or continuing any suit, arbitration or other proceeding of any type against any and all of the Released Parties ... arising out of any such claims (the foregoing injunction is referred to herein as the "Veil Piercing Settlement Injunction). The Confirmation Order will provide that the requirements of Section 524(g) of the Bankruptcy Code have been met for the issuance of the Veil Piercing Settlement Injunction.

The controversy however, centers around the Supplement to the Modified Second Amended and Restated Joint Plan of Reorganization, in which Section 10.1(a)(xv) provides as follows:

> (xv) Regardless of the existence or absence of a favorable vote as described in section 524(g)(2)(B)(ii)(IV)(bb) of the Bankruptcy Code, the Injunctions are issued either (a) under section 524(g)(1)(A) of the Bankruptcy Code to supplement the injunctive effect of a discharge under Section 524 of the Bankruptcy Code, or (b) pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court, in which case the Bankruptcy Court must also find that the Injunctions provide the same protections afforded by Section 524(g) of the Bankruptcy Code.

Both this Court and the Celotex Court considered the VPSA and not only approved the same, but the Celotex Court ordered and directed Celotex to carry out and comply with the terms of the VPSA. The VPSA was incorporated into this Court's Confirmation Order entered on March 25, 1995. The Order of Confirmation was not appealed and thus, became final. Its provisions are no longer challengeable or subject to attack. Under the VPSA, Walter Industries, the reorganized entity, paid $375 million in cash and in securities to the Celotex Settlement Fund, to be held in trust for the benefit of the asbestos-related personal injury claimants in the Celotex reorganization case. As part of the VPSA, JWC, the parent of Celotex, and its officers and controlling stockholders were given full releases by the asbestos-related personal injury claimants, none of whom personally furnished any consideration for these releases, which were instead supported solely by the consideration furnished by the reorganized Debtors. In return, both Celotex and JWC agreed to include in the Celotex Plan of Reorganization a provision providing for a § 524(g) injunction or an injunction giving the same protection to the Released Parties.

The present adversary proceeding was filed by the Released Parties in order to compel Celotex to include in its Plan of Reorganization a provision providing for a § 524(g) injunction or its equivalent, giving the protection to the Released Parties they claimed to have bargained for in the VPSA Agreement. The Motion of the Released Parties under consideration was filed on March 29, 1996, and initially argued on April 8, 1996. JWC objected to this Court's consideration of the Motion For Summary Judgment based on F.R.C.P. 56(f) as adopted by F.R.B.P. 7056(f), and that objection was sustained in order to enable the parties to conduct discovery. The hearing to consider the Motion For Summary Judgment by the Released Parties together with other pending motions, specifically a Motion to Dismiss the Counterclaim filed by JWC, a Motion to Strike Affirmative Defenses and Demand for Jury Trial was rescheduled.

The continuance immediately triggered a flurry of activity and between April 8, 1996, and May 7, 1996, the parties completed some eighteen depositions. Based on the Affidavits on file, the exhibits, and the relevant portions of the Chapter 11 cases of HHC/Walter Industries and its affiliates, it is the contention of the Released Parties that there are no genuine issues of material facts and they are entitled to the relief sought in their Complaint.

Both Celotex and JWC not only oppose the Released Parties' Motion, but Celotex also filed a Motion to Dismiss or in the Alternative to Stay All Proceedings or to Transfer (Doc. # 8), a Motion to Withdraw Reference (Doc. # 25), and its own Motion For Summary Judgment (Doc. # 76). JWC filed its Answer, coupled with its Counterclaim (Doc. # 31), and filed its own opposition to the Motion of the Released Parties, together with a Joinder in the Motion For Summary Judgment filed by Celotex (Doc. # 89), a Motion to Withdraw Reference (Doc. # 27), and on May 1, 1996, its Amended Answer, Defenses and Counterclaim (Doc # 85). To add to this barrage of salvos between the Released Parties and Celotex and JWC, Baron & Budd, Ness Motley Loadholt, Richardson & Poole, and Greitzer and Locks, filed their Notice of Joinder in the Released Parties' Motion For Summary Judgment. The latter entities are the law firms who represented parties to the veil piercing litigation and who agreed to and were signatories to the VPSA.

The Motions to Withdraw the Reference filed both by Celotex and JWC were transmitted to the District Court on April 29, 1996 (Doc # 25). However, inasmuch as no stay was entered, this Court proceeded to consider the pending Motions pursuant to F.R.B.P 5011(c), and on April 11, 1996, denied the Celotex' Motion to Dismiss or in the Alternative to Stay all proceedings and to Transfer (Doc. # 38), but deferred ruling on the Motions for Summary Judgments, and the Released Parties' Motion to Dismiss the Defendant's Counterclaims, and to Strike Affirmative Defenses and Jury Demand.

No one can seriously deny that: (1) both Celotex and JWC are signatories of the VPSA; (2) that the provision in ¶ 4(e) is not

only an integral and indispensable part of the VPSA, but it is the very heart and primary, if not the sole raison d'etre of the VPSA; (3) that without it, no Plans of the Debtors ever could have obtained confirmation; (4) that it became an essential part of the Order of Confirmation, as the VPSA was approved not only by this Court, but also by the Celotex Court which authorized and ordered Celotex to comply with its terms; (5) that counsel for Celotex stated to the Celotex Court that it is assumed that the Released Parties will receive the protection provided for by § 524(g) or similar protection acceptable to the Released Parties; (6) that Celotex did not offer any alternative protection to the Released Parties which was accepted by them; (7) that both Orders approving the VPSA were not appealed and are final, as is the Order of Confirmation in the Chapter 11 case of HHC/Walter Industries et al.; (8) that counsel for Celotex admitted, in his deposition, that the language of § 524(g) set forth in ¶ 4(e) accurately represented the agreement which was incorporated into the VPSA; and (9) that the current Plan of Reorganization of Celotex, is now scheduled to be considered for confirmation by the Celotex Court beginning June 10, 1996, Celotex may waive any injunctive relief, including a § 524(g) injunction or the alternative protections equivalent to the injunctive provision under § 524(g) which was not what was required by ¶ 4(e) of the VPSA.

Equally, there are no facts in this record which create an issue as to the possible injury claimed by the Released Parties, unless they are accorded the relief they seek in their Complaint. The potential injury they assert is two-fold: (1) unless they receive the full protection of a § 524(g) injunction, the value of the stock of the reorganized corporation will be negatively impacted; and (2) the Released Parties may be compelled to be embroiled in innumerable lawsuits filed by asbestos-related personal injury claimants. (See Affidavits of Matlock and Durham.)

In opposition to the Released Parties' Motion, Celotex' Motion for Summary Judgment contends that there was an understanding between counsel for the Debtors i.e., HHC/Walter Industries and its affiliates, and counsel for Celotex, that Celotex would not be able to propose a consensual Plan if 25% of the asbestos-related personal injury claimants could veto its Plan. It is further contended that counsel for the Debtors, i.e., Mr. Koob, "understood and acknowledged" the merits of the concerns expressed by counsel for Celotex and agreed that Celotex must have the flexibility to confirm any type of plan permissible under the Bankruptcy Code. (See Affidavit of George N. Wood). In his Affidavit at ¶ 9, Mr. Wood, counsel for Celotex, also stated that only with this understanding was Celotex willing to continue the memorialization of the modifications to the Amended VPSA announced to this Court on October 20, 1994.

While these recitations in Mr. Wood's affidavit indeed facially create a disputed fact, a closer analysis does not bear out this conclusion for the following reasons: (1) It is without dispute that Mr. Koob only represented the Debtors and certainly did not represent all the Released Parties, especially Apollo or Lehman Brothers and the rest of the Released Parties, none of which attended this alleged meeting. (2) If, in fact, Mr. Koob agreed to limit the scope of the § 524(g) injunction, a proposition not without serious doubt, and consented to the elimination of the 75% acceptance requirement of § 524(g)(2)(B)(IV)(bb) from the injunction Celotex agreed to seek in its Plan, there is nothing in the executed and signed VPSA approved by two Courts, embodied in the Order of Confirmation, which reflects this so-called understanding. Based on these facts, this Court is satisfied that this alleged modification is insufficient to carry the day and create a genuine issue of material fact.

■ The Motions For Summary Judgments are governed by F.R.C.P. 56(c) as adopted by F.R.B.P 7056(c) which provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

There is no doubt that the moving party has the burden to meet the precise and exacting standard of the Rule. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In assessing whether the movant has met this burden, the Court should view the evidence and all factual inferences which may be drawn from those facts, in the light most favorable to the party opposing the Motion. *Adickes* supra; *Environmental Defense Fund v. Marsh* 651 F.2d 983, 991 (5th Cir.1981). All reasonable doubts should be resolved in favor of the non-movant. *Casey Enterprises v. Am. Hardware Mutual Ins. Co.*, 655 F.2d 598, 602 (5th Cir.1981). There is authority for the proposition that even where the parties agree on the basic facts, it may be inappropriate to dispose of the controversy by summary judgment if the parties disagree about the inferences that should be drawn from the facts. *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir.1985); *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir.1988). However, in the present instance there is not an inference of fact at all, but rather an inference from the statute itself, which is not an impediment to disposition of this matter by summary judgment.

■ The VPSA clearly provides that it is to be governed by the laws of the State of New York. Under New York law "when parties set forth the terms of an agreement in clear and unambiguous terms in a writing intended as the final expression of their agreement, parol evidence may not be introduced to change the terms of such agreement. When the contract is clear and unambiguous the court will not look beyond the four corners of the document to interpret what the parties meant." *In re Royster Co.* 132 B.R. 684, 688 (Bankr.S.D.N.Y.1991). Furthermore, "[w]here a written agreement between sophisticated businessmen is unambiguous on its face, one party cannot defeat summary judgment by a conclusory assertion that owing to a mutual mistake or fraud the writing did not express his own understanding of the oral agreement reached during negotiations." *Chimart Associates v. Paul,* 66 N.Y.2d 570, 498 N.Y.S.2d 344, 489 N.E.2d 231 (N.Y.1986).

■ Based on the foregoing, this Court is satisfied that the use of any parol evidence to indicate an agreement by Mr. Koob to forego all requirements of a § 524(g) injunction is impermissible and improper. In addition, the undeniable fact is that numerous Released Parties were not party to such claimed agreement and Mr. Koob did not have any authority to make any binding agreement on behalf of parties who he did not represent.

This leads to the ultimate question of whether the provision in ¶ 4(e) of the VPSA requires Celotex "to propose and use its respective best efforts to obtain confirmation of the Chapter 11 Plan in the Celotex Chapter 11 case that includes an injunction pursuant to § 524(g) of the Code or an injunction acceptable to the Released Parties that provides for the same protection afforded by § 524(g) to the Released Parties."

■ Celotex contends that it did in fact propose an injunction in its Supplement to the Second Amended Plan dated April 1, 1996, pursuant to § 524(g)(1)(A); and this is precisely what it agreed to do and is doing, and it never intended that such agreement should include the 75% acceptance requirement of § 524(2)(B)(ii)(IV)(bb), since such acceptance requirement is not an indispensable element of the Supplemental Injunction added to § 524 by the Bankruptcy Reform Act of 1994. Pub.L. No. 103–394. This proposition urged by Celotex not only lacks any logic, but it is clearly refuted by the legislative history of the Amendment. Section 524(g)(1)(A) is nothing more, nor nothing less, than a grant of authority to the Bankruptcy Court to issue an injunction to supplement the injunctive effect of the discharge granted by the Order of Confirmation pursuant to § 1141(d)(1).

■ This subclause is totally silent as to the scope of the injunction which may be granted and the conditions under which it may be granted. On the contrary, it specifically provides that the injunction must be granted "in accordance with this subsection." This of course includes § 524(g)(2)(B)(ii)(IV)(bb), the clause which requires the establishment of a separate

class of claimants, whose claims will be addressed by trust to be established pursuant to subclause (i) and the members of such class vote by at least 75% of those voting in favor of the Plan. The Legislative History of this Amendment fully supports the proposition that the 75% vote requirement is an integral and an indispensable part of § 524(g). According to the House Report on the proposed Amendment, it requires, among other things, the establishment of a separate class for those with present claims which must vote by a 75% margin to approve the Plan. H.R.Rep. No. 103–834 103rd Cong., 2d Sess. 8–12; Cong.Rec. H10765 (October 4, 1994). The Statement on the Senate Floor by Senator Heflin reinforces the position of the House in no unmistakable terms. According to Senator Heflin, "this Section is carefully limited to bankruptcy orders where certain specified conditions are satisfied including the requirements that a supermajority of the affected class of asbestos claimants to vote to approve the Plan creating the trust and authorizing the injunction." (140 Cong. Rec. S14464 (Oct. 6, 1994)).

Furthermore, commentators are in agreement that § 524(g) requires a 75% approval by a separate creditor class. *See e.g.,* 2 W. Norton, *Bankruptcy Law and Practice,* § 48:5.5 at 49; Collier, *On Bankruptcy* § 524.07[2]; and Ralph R. Mabey & Peter A. Zisser, *Improving Treatment of Future Claims: The Unfinished Business Left by the Manville Amendments,* 69 Am.Bankr. L.J. 487, 496 (1995). One commentator reasons that the 75% approval requirement is so "the Court [approving the injunction] will presumably ensure that a consenting class of such claims is not unfairly gerrymandered. The legislative history speaks of a single 'separate creditor class ... for those with present claims.'" *Collier, On Bankruptcy* § 524.07[2] n. 146, citing to 140 Cong.Rec. H10765 (daily ed. Oct. 4, 1994) (remarks of Representative Brooks).

■ There is no doubt in this Court's mind that Celotex agreed to include in its Plan a provision for a § 524(g) injunction, which includes subclause (2)(B)(ii)(V)(bb) requiring the 75% vote and that it did not offer to the Released Parties an alternative which would give the equivalent protection and which the Released Parties accepted. Celotex clearly did not live up to what it promised, even though the Debtors fully performed their end of the bargain. Thus, based on the undisputed facts, the Released Parties are entitled to a determination that the VPSA required and called for a full supplemental injunction which includes the supermajority requirement. This conclusion should not be interpreted to mean that this Court intends to directly or indirectly intimate what type of Plan, if any, should be confirmed by the Celotex Court. To the contrary, the determination as to the scope and the extent of a § 524(g) injunction is limited to the determination of what was required by the VPSA. The VPSA certainly did not include a requirement that Celotex obtain a confirmation, but merely that it will use its best efforts to obtain confirmation of a Chapter 11 Plan which includes a provision for an injunction pursuant to § 524(g) of the Code.

■ This leads to the last issue to be resolved; i.e., what would be the appropriate remedy which may be granted to the Released Parties. In their Complaint, they seek specific performance of the VPSA. This, of course, could only be implemented by a mandatory injunction. Admittedly, this is an equitable remedy and should not be granted if the party seeking the relief may be adequately compensated by a damage award. In addition, an injunction is not appropriate unless the Court is satisfied that it is called for at the time it is granted and the Court which issues the mandatory injunction is in a position to enforce it. Hence comes the rub. Celotex and Carey Canada, Inc., are currently Debtors in their own Chapter 11 cases pending before Judge Baynes. It would be unseemly and inappropriate for this Court to issue a mandatory injunction. Accordingly, this Court defers consideration of the relief sought for specific performance, thus giving the parties an opportunity to attempt to fashion an alternative remedy, and if not, to submit their respective recommendations of the proper remedy based on this Court's determination that Celotex and

JWC, so far, did not live up to their obligations under the VPSA.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment filed by James Walter, et. al., be, and the same is hereby, granted on the request for declaratory relief. It is further

ORDERED, ADJUDGED AND DECREED that the provision in the Supplement to the Second Amended Plan, dated April 1, 1996, violates and is not in compliance with ¶ 4(e) of the VPSA. It is further

ORDERED, ADJUDGED AND DECREED that for reasons stated, the Request for Specific Performance is hereby denied, without prejudice to the released parties to seek additional relief if they are unable to obtain satisfaction and compliance with the requirements of ¶ 4(e) of the VPSA. It is further

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment filed by The Celotex Corporation and Jim Walter Corporation be, and the same is hereby, denied.

DONE AND ORDERED.